THE PEOPLE *ex rel.* John S. Stevens

*v.*

THE FIDELITY AND CASUALTY COMPANY OF NEW YORK.

*Filed at Ottawa October 29, 1894.*

1. INSURANCE—*foreign company may take multiform risks.* There being no prohibition in the statute of Illinois against the doing of multiform insurance, the comity that prevails between the States permits a foreign corporation to do such insurance in this State, although our statute does not authorize the formation of companies for that purpose.

2. The absence of authority in our statute to organize such companies is not an implied prohibition of the transaction of multiform insurance by a foreign company within the State.

3. SAME—*effect of act of May 31, 1879.* The act of May 31, 1879, authorizes every insurance company organized under the laws of another State, except life insurance companies, to do business in this State upon the conditions named in said act, including those having authority to do a multiform business.

4. The expression "any kind of insurance," used in the act of May 31, 1879, will apply to all kinds of insurance, the only implied limitation being, that it be such as is authorized by the company's charter.

5. SAME—*capital stock of and deposit by multiform company.* The amount of capital stock and deposit required by our statute of a foreign insurance company need not be multiplied by the number of kinds of insurance done, the one simple sum being sufficient to cover all.

6. SAME—*retaliatory statute—how applied.* A foreign insurance company will not be excluded from Illinois, under our retaliatory act, on the ground that the State of its creation would exclude similar companies of this State, unless the statute of such State, and its practical administration to that effect, are clearly established.

7. STATUTES—*the title of an act should be regarded in its construction.* The title of an act of the legislature, though itself no part of the act, is not to be wholly disregarded in construing such act, particularly as bearing upon the *object* of the legislature in passing the law.

8. SAME—*construction of statute in practice.* Where the execution of a statute is confided to a particular department of the government, the court will regard, and in doubtful cases adopt, the construction acted upon in such department.

APPEAL from the Circuit Court of Peoria county; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding.

Messrs. STEVENS & HORTON, Mr. JOHN M. NIEHAUS, State's Attorney, Mr. JOHN S. STEVENS, and Mr. JOHN N. JEWETT, for the appellant.

Mr. SAMUEL S. PAGE, and Mr. CHARLES T. STRATTAN, for the appellee:

By the law of comity, corporations organized under the laws of one State may, in the absence of a statute to the contrary, do business and exercise its franchises in every other State. *Stevens* v. *Pratt,* 101 Ill. 206; *Insurance Co.* v. *Langley,* 62 Md. 196; *Bank* v. *Earle,* 13 Pet. 519; *Christian Union* v. *Yount,* 101 U. S. 353; *Railroad Co.* v. *Kneeland,* 4 How. 16; *Cowell* v. *Springs Co.* 100 U. S. 55.

In Morawetz on Private Corporations (chap. 7, p. 509,) it is said: "It may be stated as a general rule, resting upon the unwritten law of comity, that a corporation will be recognized and permitted to prosecute its lawful enterprises in every State which has not expressly refused its consent." Story on Conflict of Laws, chap. 6, p. 106.

Mr. JUSTICE BAKER delivered the opinion of the court:

Some sixteen days after the commencement of the term, and a week or more after this cause had been submitted to the court for decision upon the merits, a motion to dismiss the appeal was entered therein, and seventeen reasons assigned, and elaborately argued in a printed brief, as the grounds of such motion. That motion was reserved until the final disposition of the case. In disposing of it we do not deem it expedient to pass in detail upon the several grounds urged for the proposed action of the court. It is sufficient to say, that some of the grounds insisted upon are not based on the record, and some are trivial; that some have no substantial merit, and some were not suggested in apt time, so as to afford opportunity for amendment. The motion to dismiss is denied.

The proceeding at bar is an information in the nature of a *quo warranto*, filed, by leave of the Peoria circuit court, by the State's attorney of Peoria county on the relation of John S. Stevens. Its object is to test the right of appellee, the Fidelity and Casualty Company of New York, to exercise in this State the franchises of doing a life accident insurance business, a steam boiler insurance business, a plate glass insurance business, an employer's liability insurance business and a fidelity insurance business. In the court below appellee filed a plea or answer to the information. A demurrer to said plea or answer was overruled, and thereupon the plaintiffs abided by their demurrer, and a judgment was rendered that the plaintiffs take nothing by their writ, and against the relator for costs.

The appellee company was incorporated and organized in the year 1875, in the State of New York, under the provisions of chapter 463 of the laws of 1853 of that State, and the amendments thereto, and was authorized to do a fidelity business, a life accident business, an employer's liability business, a steam boiler business and a plate glass business. It has complied with all the requirements of the insurance laws of the State of New York, and is, and for many years has been, duly licensed to do said several kinds of insurance business in that State. It has a paid up capital of $250,000, and in addition thereto a re-insurance reserve fund of $881,985.17, being fifty per cent of the gross premiums in each of the branches of business done by said company, and a net surplus over and above all liabilities, including total unearned premiums, of $78,602.48, and it has on deposit with the superintendent of insurance of the State of New York, securities of the kind required by the laws of that State, duly assigned to said officer in trust, for the benefit of all its policyholders in each branch of its said business, in the sum and of the market value of $200,000, which securities so assigned are now held by said superintendent of insurance in trust for the policyholders of the company.

In 1879 said chapter 463 of the laws of 1853 was amended. (See chap. 485 of the Laws of New York, 1879.) Section 1 of said chapter 463 was amended so as to read as follows :

"Section 1. Any number of persons, not less than thirteen in number, may be associated, and form an incorporation or a company for any of the purposes specified in either of the following departments :

"*First Department*—To make insurance upon the lives of persons, and every insurance pertaining thereto or connected therewith, and to grant, purchase and dispose of annuities.

"*Second Department*—To make any of the following kinds of insurance : First, upon the health of persons ; second, against injury, disability or death of persons resulting from traveling, or general accidents by land or water; third, guaranteeing the fidelity of persons holding places of public or private trust; fourth, upon the lives of horses, cattle and other live stock; fifth, upon plate glass against breakage; sixth, upon steam boilers against explosion, and against loss or damage to life or property resulting therefrom; seventh, against loss by burglary or theft, or both."

And section 2 was amended so as to read as follows : "No company organized under this act for the purposes named in the first department shall undertake either of the risks mentioned in the second department, and no company organized under this act for either of the purposes in the second department shall undertake any business mentioned in the first department, nor shall any such company hereafter organized undertake or do more than one of the several kinds of insurance mentioned in said second department, and no company organized under this act shall undertake any business or risk except as herein provided : *Provided,* that nothing herein contained shall affect the business of any company heretofore duly organized under the second department of this act."

Thereafter, the Auditor of Public Accounts of the State of Illinois executed and delivered to the appellee company a license and certificate authorizing it to do business in its several lines of insurance in the State of Illinois during the year 1880, and in each and every year since that time said Auditor has issued to said company a like license and authority. When the company first procured a license to transact insurance business in this State, it in all things complied with the requirements of the insurance laws of this State in regard to foreign insurance companies doing business in this State, unless it be in respect to the matters which are at issue in this suit and which are hereinafter stated, and annually since, and up to and including the present time, the company has filed its statements, paid its taxes, and in all things (unless it be as is above excepted) complied with all the requirements of the insurance laws of Illinois relating to insurance companies organized under the laws of other States and doing business in this State.

We may here briefly refer to some of the provisions of our statute law that seem to have a bearing upon the questions at issue in the case at bar.

It is provided in section 6 of an act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois, approved March 11, 1869, (Laws of 1869, p. 209,) that no joint stock company shall be incorporated under said act in the city of Chicago, nor shall any company incorporated under the act establish any agency for the transaction of business in said city, with a smaller capital than $150,000 actually paid in in cash, nor in any other county in the State with a smaller capital than $100,000 actually paid in in cash. And it is provided in section 22 of said act, that it shall not be lawful for any insurance company incorporated by or organized under the laws of any other State of the United States or any foreign government, for any of the purposes specified in the act, to take risks

or transact any business of insurance in this State unless possessed of the amount of actual capital required of similar companies formed under the provisions of the act, and that any company incorporated by or organized under any foreign government should, in addition, deposit with the Auditor of Public Accounts, for the benefit and security of policyholders residing in the United States, a sum not less than $200,000 in certain specified stocks or in certain specified bonds and mortgages. And afterward, by section 1 of an act approved and in force March 19, 1872, (Laws of 1871-72, p. 503,) it is provided, that when any fire or fire and marine insurance company organized under the laws of any foreign government should file with the Auditor of Public Accounts a certificate of the insurance department of any other State, stating that a deposit of $200,000, or the equivalent of that amount, for the protection of the policyholders in the United States, had been made by said company in that State, in accordance with the existing laws thereof, said company should not be required to make a deposit in this State, so long as said deposit should remain intact with the superintendent of the insurance department or treasurer of that State.

By an act in force July 1, 1879, (Laws of 1879, p. 180,) it is provided as follows: "That every insurance company or association incorporated by or organized under the laws of any other State or any foreign government must comply with the requirements of the general insurance laws of this State, governing fire, marine and inland navigation insurance companies doing business in the State of Illinois, before it shall be lawful for such company or association to take risks or transact any kind of insurance business in this State other than that of life insurance, and such companies or associations, and all persons acting as agents thereof, shall be subject to the same penalties prescribed therein for violation of any of the provisions thereof: *Provided,* that no plate glass, acci-

dent or steam boiler insurance company shall be required to have a larger capital than $100,000 actually paid up; nor shall any such company be authorized to transact business in this State without having previously deposited with the State Treasurer of this State, or with the agent or financial officer or commissioner of insurance of the State where such company is organized, securities duly assigned to such officers in trust for the benefit of all its policyholders, the market value of which shall, at all times, be equal to $100,000. Said deposit shall consist of such like securities as fire insurance companies are, by the general insurance laws of this State, authorized to invest in."

By an act in force July 1, 1887, (Laws of 1887, p. 143,) it is provided, that any company with a paid up capital of not less than $250,000, incorporated and organized under the laws of this or any State of the United States, for the purpose of transacting business as surety on obligations of persons or corporations, and which has complied with all the requirements of the law regulating the admission of insurance companies to transact business in this State, may transact such surety business in this State.

By an act in force July 1, 1889, (Laws of 1889, p. 169,) provision is made for the incorporation and government, in this State, of accident life insurance companies. By section 1 of the act such companies are authorized to insure persons against loss of life or personal injury resulting from accident. By section 2 it is required that the capital stock of such a company shall be at least $200,000, fully paid up in cash. It is provided in section 4 that such company shall deposit with the Auditor of Public Accounts at least $100,000 in specified stocks, estimated at their market value, or in mortgages, being first liens, etc. Section 7 provides that any company organized under the act shall form a re-insurance reserve, which shall be fifty per cent of the gross premiums of all out-

standing policies. And section 8 is as follows: "It shall not be lawful for any company, association, individual or individuals organized or doing business under the laws of this State or of any other State government, to transact the business of accident life insurance in this State, or to aid in the transaction of the same, unless such company, association, individual or individuals has or have conformed in such other State, or in this State, with the same requirements in regard to capital and reserve that are imposed by sections four (4) and seven (7) of this act upon companies in this State."

It is to be noted that the capital stock of the Fidelity and Casualty Company of New York, appellee herein, is paid up in full, and is $250,000, which is $50,000 more than the capital stock required for doing an accident life insurance business in this State, and $150,000 more than the amount of capital stock required for doing either a plate glass insurance business or a steam boiler insurance business, and the same amount of capital stock that is required for doing a fidelity insurance or surety business. An employer's liability insurance business, as we understand it, is a species of guarantee insurance, (9 Am. & Eng. Ency. of Law, p. 65,) and falls within the category of "any kind of insurance business in this State other than life insurance" that is mentioned in the act of May 31, 1879, quoted *ante,* and, as we interpret that act, requires a capital of $150,000 if it transacts business in the city of Chicago, and a capital of $100,000 if it does business only elsewhere in this State. In either event, the actual paid up capital stock of appellee is far in excess of that required for transacting such employer's liability insurance business in this State. It is also to be noted that the company has on deposit with the superintendent of insurance of the State of New York, securities in the sum and of the market value of $200,000, which is an amount and value of deposit that is manifestly equal to, if not largely in excess of, the amount of deposit required to be made in

order to transact an insurance business in this State of any of the kinds that are done by appellee. And it is further to be noted that it has a re-insurance reserve fund equal to that required by our statute for doing a life accident insurance business.

It seems to be one of the contentions of appellant, that since a company cannot be organized, under the laws of this State, to do the different classes of insurance business done by appellee, therefore there is an implied prohibition that forbids the transaction of a multiform insurance business by one and the same company within the limits of the State,—in other words, that the doing of such multiform insurance business is in violation of the spirit of its laws. We are not satisfied of the soundness of this position. It is admitted that our statutes do not, in express terms, prohibit a company from doing more than one kind of insurance. The rule is, that where there is no positive prohibitive statute, the presumption, under the law of comity that prevails between the States of the union, is, that the State permits a corporation organized in a sister State to do any act authorized by its charter or the law under which it is created, except when it is manifest that such act is obnoxious to the policy of the law of this State. In *Stevens* v. *Pratt,* 101 Ill. 206, it was held by this court that mere absence of legislation authorizing the formation of a particular class or kind of corporations does not show that it is against public policy to create such corporations, but that such public policy must be expressed in some affirmative way. In *Cowell* v. *Springs Co.* 100 U. S. 55, the Supreme Court of the United States said : "If the policy of the State or Territory does not permit the business of the foreign corporation in its limits, or allow the corporation to acquire or hold real property, it must be expressed in some affirmative way. It cannot be inferred from the fact that its legislature has made no provision for the formation of similar corporations, or allows corporations to be formed only by general laws. Telegraph

companies did business in several States before their legislatures had created, or authorized the creation of, similar corporations, and numerous corporations existing by special charter in one State are now engaged, without question, in business in States where the creation of corporations by special enactment is forbidden." And see, also, *Christian Union* v. *Yount,* 101 U. S. 356.

But the principal ground of contention urged by counsel for appellant is formulated by them thus : "The laws of the State of Illinois, which establish the public policy of the State upon the subject, imperatively demand that foreign and domestic companies organized for the doing· of an insurance business in each of the different lines or classes of insurance shall have a specified paid up capital and a specified and definite amount of deposit applicable to the class of insurance for which its obligations, by policy or otherwise, are given. This is a prerequisite to the right of any company, either foreign or domestic, to write policies of insurance, or other obligations in the nature of insurance, for the people of this State. The appellee, according to its own admissions, has not conformed to and does not comply with these requirements of the positive law, which fix the public policy of the State in that respect. It is therefore transacting business in this State of a multiform character, in violation of the laws of the State and in defiance of its public policy, and the license from the Auditor does not protect it."

It seems to us that this argument is fallacious, and that the fallacies are contained in the premises from which the conclusions are deduced. Let us turn again to the act of May 31, 1879. It is therein provided as follows : "That every insurance company or association incorporated by or organized under the laws of any other State or any foreign government, must comply with the requirements of the general insurance laws of this State governing fire, marine and inland navigation companies doing business in the State of Illinois, before it shall be lawful

for such company or association to take risks or transact
any kind of insurance business in this State other than
that of life insurance." What insurance companies are
authorized by this act to do business in this State? We
can best answer that question, almost in the very words of
the statute, by a transposition of the clauses contained in
that portion of the act that we have quoted. It shall be
lawful for every insurance company or association incor-
porated by or organized under the laws of any other State
or any foreign government, to take risks or transact any
kind of insurance business in this State, other than that
of life insurance, upon complying with the requirements
of the general insurance laws of this State governing fire,
marine and inland navigation insurance companies doing
business in the State of Illinois. *Ex vi termini, every* insur-
ance company incorporated by or organized under the
laws of any other State is within the purview of the privi-
lege and license conditionally given by this statute. Insur-
ance companies organized under the laws of the State of
New York are within the scope and meaning of the stat-
ute, and so are insurance companies organized under said
laws that are vested with authority to do a multiform
insurance business. It cannot be said that the act did not
contemplate multiform insurance companies, for the ap-
pellee corporation was organized four years prior to its
enactment. And besides that, the very act in question
makes special reference to the statute in regard to fire,
marine and inland navigation insurance companies, and
that statute made express provision for insurance com-
panies authorized to do a multiform insurance business.
In fact, the only class of insurance companies that does
not seem to be within the intention of the act is the class
known as life insurance companies, and that class is ex-
pressly excluded by one of the clauses of the act.

It is a rule of the law that the title of an act, though
itself no part of the act, is not to be wholly disregarded
in construing such act; and the reason of the rule is, that

the object of the legislature is often avowed in the title, as well as in the preamble.    (*Cruse* v. *Aden*, 127 Ill. 231; *Perry County* v. *Jefferson County*, 94 id. 214.)    The title of the act in question is:    "An act to compel all insurance companies of other States and countries doing any kind of insurance business in this State, other than life, to comply with the general fire and marine insurance laws of this State, and to require deposits of plate glass, accident and steam boiler insurance companies."    This would indicate that it was the legislative intention that the act should apply to *all* insurance companies of other States, doing any kind of insurance business other than life, that would comply with the requirements of our statutes.

What class or classes of insurance business may a company of another State licensed to do business in this State, lawfully transact therein under said act?    In the words of the act, "it shall be lawful for such company or association to take risks or transact any kind of insurance business in this State other than that of life insurance."    The expression "any kind of insurance," will apply to all kinds of insurance, the only implied limitation being that the insurance business transacted shall be such as is authorized by the charter of the company, or the articles of incorporation and law under which it is organized.

Under our insurance statutes, as we understand them, the paid up capital of an insurance company and the amount of its deposit are not necessarily applicable, alone, to obligations growing out of one class or branch of insurance, and that only.    The language used in regard to the deposit required by the act of 1869 (sec. 22) is, "for the benefit and security of policyholders residing in the United States."    That used in respect to the deposit mentioned in the act of 1872 (sec. 1) is, "for the protection of the policyholders in the United States."    That used with reference to the deposit demanded by the act of 1879 is, "in trust for the benefit of all its policyholders."

And the language employed in section 16 of the act of
1889 shows conclusively that the deposit required of the
company by that act is for the security and benefit of "all
of its policies."   The obligations assumed by an insur-
ance company in the policies issued by it are not always
limited to one particular line or class of insurance.   For
example, under the act of 1869, as it was originally en-
acted, a company might have been incorporated to insure
not only against loss or damage by fire, but also to insure
against the risks of inland navigation and transportation;
and under said act as amended in 1879 and 1881, a com-
pany may now be organized to insure against loss or
damage by fire, lightning and tornadoes, or either or any
of said causes, and also to insure against the risks of in-
land navigation and transportation.   See 1 Starr & Curtis'
Stat. chap. 73, p. 1310.

The capital stock of an insurance company, like that
of any other incorporated company, is a trust fund.   But
it is a trust fund for the payment of all the debts and
legal liabilities of the company, and not a trust fund sim-
ply, or even primarily, for the payment of obligations
growing out of contracts of insurance.   It is otherwise in
respect to the deposits demanded by our statutes.   They
are trust funds for the benefit of the policyholders of the
insurance company, and for the benefit of all the policy-
holders alike, regardless of class lines.

The effect of the act of May 31, 1879, was to place re-
strictions upon all insurance companies of other States
or foreign countries, whereas prior thereto many of said
companies could come into this State under the law of
comity, with no restrictions whatever imposed upon them,
and here do whatever they were authorized to do in the
respective States or countries in which they were char-
tered or organized.   As we have seen in the first part of this
opinion, there is a proviso to that part of said act that
we have above considered.   A proviso is to be construed
to qualify what is affirmed in the body of the act, section

or paragraph which precedes it. (*Boone* v. *Juliet,* 1 Scam. 258; *City of Chicago* v. *Phœnix Ins. Co.* 126 Ill. 276.) Here, if it were not for the proviso, a foreign insurance company, or one of another State, could not, under the body of the act, transact in the city of Chicago a plate glass insurance business, a steam boiler insurance business or an accident insurance business without it had a paid up capital of $150,000. Manifestly, one of the purposes of the proviso was to relieve such insurance companies, in doing business in said city in the way of plate glass, accident or steam boiler insurance, from the requirement of having a paid up capital of more than $100,000. Another intention of the proviso evidently was to relieve foreign insurance companies engaged in said lines of business from the burden that would have been imposed by the body of the act, taken in conjunction with section 22 of the act of 1869 and section 1 of the act of 1872, of making so large a deposit as $200,000 as a condition precedent to transacting business in said lines of insurance.

Upon the whole, we are of opinion that the appellee company having a paid up capital as large as that required by any of the restrictive statutes of this State, and having made a deposit as large as that required by any of said statutes, is entitled to come into this State and transact therein business in any of the lines of insurance that it is authorized to do business in by the law under which it was incorporated.

That we are right in our conclusions is made more manifest by these considerations: It appears from the information and answer, that in 1879,—the year that the law of May 31, 1879, was enacted,—appellee made application to the insurance department of this State for license to do business therein as authorized by its charter and under the laws of the State of New York, and thereupon the Auditor of Public Accounts, by the advice and with the approval of the Attorney General, executed and delivered to it a license as applied for, for the year 1880,

and that annually thereafter, and up to and including the time of this suit, a like license was issued. And it further appears from the answer, and is admitted by the demurrer, that other New York and eastern insurance companies authorized to do four or more kinds of insurance business are doing multiform insurance business in this State, and are licensed and authorized to do so by the insurance department of the State of Illinois. In construing statutes, the rule that contemporaneous exposition is strongest in the law is to be regarded. (*Phœbe* v. *Jay*, Breese, 268; *Isaacs* v. *Steel*, 3 Scam. 97; *Russell* v. *Rumsey*, 35 Ill. 362.) Where the execution of statutes is confided to a particular department of the government, the court will regard, and in doubtful cases adopt, the construction acted on by such department. (*Mathews* v. *Shores*, 24 Ill. 28; *Isaacs* v. *Steel, supra.*) And if the construction is doubtful, long continued action upon a particular construction may reduce the uncertainty to a fixed rule. *Comstock* v. *Cover*, 35 Ill. 470.

It is insisted that the statutes of New York show that an Illinois insurance company organized to do several different kinds of insurance business would not be permitted to transact business in the State of New York, and in that connection attention is called to our retaliatory statute, (1 Starr & Curtis' Stat. p. 619,) and it is urged that when any State imposes any burdens and restrictions upon companies organized in this State and doing business in such other State, then the companies of such State doing business in this State shall be subject to the same conditions and restrictions. It seems to us that there are two sufficient answers to this claim. In the first place, it is averred in the plea of appellee that "there is now no law in New York prohibiting an Illinois insurance company or corporation organized to do all the several kinds of insurance business done by the defendant in the State of Illinois, from being admitted into the State of New York and there authorized to do such multiform insurance busi-

ness." The laws of a sister State, as well as those of a foreign country, are deemed foreign laws, and questions of foreign law are questions of fact, and being such, it is required that they shall be proved by evidence. (1 Rapalje & Lawrence's Law Dic. titles "Fact" and "Foreign Laws;" *Hempstead* v. *Reed*, 6 Conn. 480.) In this case, the truth of the fact alleged in the plea is admitted by the demurrer.

A second sufficient answer to the claim is, we think, to be found in the decision of the Supreme Court of Minnesota in *State* v. *Fidelity and Casualty Ins. Co.* 39 Minn. 538. In that case the two sections of the statute law of the State of New York that are set out at large in the first part of this opinion were considered by the court. The conclusions there reached were, that a foreign corporation which had complied with the laws of Minnesota should not, as a measure of retaliation, and by force of the retaliatory statute of Minnesota, be excluded from doing business in said State upon the ground that the laws of the State where such foreign corporation was created would exclude corporations of Minnesota from doing business there, unless it is clearly apparent that such is the effect of the foreign law, and that, the proper effect of the statutes of New York being considered doubtful, and the manner of their practical administration being undisclosed, a judgment of ouster against the New York corporation should be refused. We are satisfied of the soundness of the reasoning by means of which these conclusions of the court were reached. We deem it unnecessary to again travel over the same ground.

We find no error in the record before us. The judgment is affirmed.

<em>Judgment affirmed.</em>