# Supreme Court Decisions.

## INDEMNIFYINC INSURANCE BY LIFE COMPANIES.

THE STATE, EX REL SHEETS, ATTORNEY-GENERAL, v. THE AETNA
LIFE INSURANCE CO.

69 Ohio State—Decided, January 5, 1904.

*Life Insurance Company Incorporated in Another State—Indemnify-
ing Employers Against Loss or Damage from Personal Injury—
May Transact Business in Ohio, When—Section 3596, Revised
Statutes—Comity of States—Conflict of Laws.*

1. A life insurance company incorporated and organized under the
   laws of another state and authorized by its charter to engage in
   the business of "indemnifying employers against loss or damage for
   personal injury or death resulting from accidents to employes or
   persons other than employes," may, upon complying with the statu-
   tory requirements regulating deposits by foreign corporations, be
   licensed and permitted, under favor of Section 3596, Revised
   Statutes, to engage in and transact such employers' liability in-
   surance in this state.

2. In the absence of any statute in Ohio prohibiting life insurance
   companies from doing an employers' liability insurance in this
   state, and the business itself being by statute expressly author-
   ized, a life insurance company incorporated and organized under
   the laws of a sister state and empowered by its charter to engage
   in the business of employers' liability insurance may, by the
   comity that prevails between the states, be licensed and permitted
   to transact such business in this state, although our statute has
   not in express terms conferred upon domestic life insurance
   companies authority to engage in or transact that particular kind
   of insurance. Judgment of ouster refused.

Quo warranto.

The petition in this case was filed in this court by the attor-
ney-general, and is as follows:

"Now comes J. M. Sheets, who is the duly elected, qualified
and acting attorney-general of the state of Ohio, and gives the

court to be informed and to understand that the defendant, The Aetna Life Insurance Co., is a corporation organized under and by virtue of the laws of Connecticut for the purpose of transacting the business of life insurance, and is and has been for many years last past engaged in said business of life insurance. For more than ten years last past said defendant has been and is now duly authorized to engage in the business of life insurance within the state of Ohio, and during all of said time has been and still is actively engaged in the transaction of said business of life insurance within this state.

"Prior to the twenty-fourth day of June, 1902, said defendant procured an amendment to its charter, whereby it was authorized to engage in the business of 'indemnifying employers against loss or damage for personal injury or death resulting from accidents to employes or persons other than employes', which said business is commonly termed 'employers' liability insurance.' The said defendant thereupon deposited with the superintendent of insurance of the state of Ohio securities to the amount of fifty thousand dollars ($50,000), as provided by Section 3641b, Revised Statutes of Ohio, and made application to him for a license to engage in the said business of employers' liability insurance within the state of Ohio. Said superintendent of insurance thereupon, to-wit, on the twenty-fourth day of June, 1902, issued to said defendant a license, purporting to authorize it to engage in the said business of employers' liability insurance.

"Thereupon the said defendant assumed the right, and is now actively engaged in the transaction of said business of indemnifying employers against loss or damage for personal injury or death resulting from accidents to employes or persons other than employes, within this state.

"Wherefore, plaintiff says that by reason of the fact that the defendant is duly authorized and empowered to engage in the business of life insurance within the state of Ohio, and is now and has been for more than ten years last past actively engaged in said business of life insurance within this state, it has no authority under the laws of Ohio to engage in said business of indemnifying employers against loss or damage for personal injury or death resulting from accidents to employes or persons other than employes. But on the contrary the said defendant is prohibited by the laws of the state of Ohio from engaging in said business.

"Wherefore, the plaintiff prays the judgment of this court that the defendant be ousted and wholly prohibited from carrying on the said business of indemnifying employers against loss or damage for personal injury or death resulting from accidents to employes or persons other than employes, within this state, and asks such further and other relief as the nature of the case may require."

To this petition the defendant filed the following demurrer:

"Comes now The Aetna Life Insurance Co., defendant herein, and demurs to the petition for the reason that the facts stated therein are not sufficient to constitute a cause of action against this defendant."

The questions for consideration in this case are those arising upon this demurrer.

*J. M. Sheets, Attorney-General,* for plaintiff.

*Paxton & Warrington, Gordon, Granger & DeWitt* and *Booth, Keating & Peters,* for defendant.

CREW, J.; BURKET, C. J., SPEAR, DAVIS and SHAUCK, JJ., concur.

It is admitted in this case that the defendant, The Aetna Life Insurance Co., is a corporation duly organized under the laws of the state of Connecticut. That by its charter and the amendment thereto it is authorized and empowered to take insurance risks on life and against accidents to persons, and to engage in the business of "indemnifying employers against loss or damage for personal injury or death, resulting from accidents, to employes or persons other than employes;" and it affirmatively appears from the allegations of relator's petition that for more than ten years last past said defendant company has been transacting in this state the business of life insurance; that on June 24, 1902, said company having complied with the statutory requirements regulating foreign corporations doing an employers' liability insurance in this state, there was issued to it by the superintendent of insurance of the state of Ohio a license authorizing and empowering it to engage in such insurance in this state, and that since said twenty-fourth day of June, 1902, said defendant company has been and now is carrying on within this state said business of employers' liability insurance. No question is made as to the charter powers of the defendant company; these are conceded, but it is contended by the relator that said company being a life insurance company, and being now actively engaged in transacting the business of life insurance in the state of Ohio, may not therefore lawfully be licensed or permitted to carry on or continue the business of employers' liability insurance

within this state.  In support of this contention it is argued:
1. That the statutes of Ohio do not authorize life insurance
companies to transact both a life and employers' liability in-
surance.   2. That a corporation formed under the laws of an-
other state and transacting the business of insurance in Ohio,
is only permitted to engage in such kind of insurance in this
state as a domestic corporation is authorized to transact.   We
shall consider these propositions in the order named.

.  1. Section 3596, Revised Statutes, prescribes and defines the
kind of business that may be done and the character of risks
that may be taken by a company or corporation organized or
incorporated under the laws of another state and engaged in
transacting the business of life insurance in this state.   That
section, so far as its privisions are pertinent to the present
inquiry, reads as follows:

" * * * No company * * * organized or incorporated
by act of congress, or under the laws of this or any other state
of the United States, or by any foreign government, transact-
ing the business of life insurance in this state, shall be per-
mitted or allowed to take any other kind of risks except those
connected with, or appertaining to making insurance on life or
against accidents to persons, * * * ."

This section substantially in its present form was first en-
acted in 1888.  Prior thereto life insurance companies, whether
foreign or domestic, doing business in this state, were not au-
thorized to take any other kind of risks than those connected
with or appertaining to making insurance on life.  By the
amendment of March 27, 1888, the authority of such com-
panies was so far enlarged and extended as to permit and allow
them not only to make insurance on life, but to permit them
to take risks and make insurance *connected with or appertain-
ing to accidents to persons*.  This section was again amended
May 2, 1902 (95 O. L., 355), when it took its present form, but
no change or modification was made thereby as to the right of
the companies therein named to insure against accidents to
persons.

While the language of this section is that of regulation and
restriction 'rather than of affirmative grant, nevertheless the
language therein employed, by clearest implication, recognizes
the right and would seem to confer upon and invest companies

of the character of the defendant company, with full authority
to make insurance and take risks in any wise connected with
or appertaining to accidents to persons; otherwise the Legisla-
ture would not have undertaken to designate and define the
character of accidental risks that might be taken by such com-
panies. When, then, the defendant company is clothed with
authority to engage in the business of employers' liability in-
surance within this state, depends upon whether or not that par-
ticular kind of insurance is embraced and included in the
authority so given and permitted, to make insurance and take
risks *connected with and appertaining to accidents to persons.*
If it is, then admittedly the defendant, in making such insur-
ance, was and is acting clearly within the scope of its delegated
powers. That this kind of insurance, employers' liability in-
surance, may from its very nature appropriately be classified
with and peculiarly belongs to what is commonly known and
designated as accident insurance, must, we think, be conceded
inasmuch as such insurance has for its primary purpose indem-
nification against the effects of *accidents* resulting in bodily in-
jury or death. It is said by Barker, J., in *Employers' Assur-
ance Corporation* v. *Merrill,* 155 Mass., 406:

"In one sense, there can be no doubt that an employers' lia-
bility policy is accident insurance. Such policies cover accidents
to others than the assurred, but the assured must stand in such
a relation to the person accidentally injured or killed as to be
legally liable for the result of the accident, and it is only an
accident causing bodily injury or death which creates a right
to the insurance."

But it is argued by relator that this character of insurance
is not within the provisions of Section 3596, and could not have
been within the contemplation of the Legislature at the time
Section 3596 was enacted, for the reason, as claimed, that such
insurance was then unknown in this state. This statement is
challenged by counsel for defendant who assert that employers'
liability insurance was not only known, but was extensively
written in Ohio for several years prior to the enactment of this
statute. Whatever the fact may be as to this, if the language
employed in Section 3596 is sufficiently comprehensive in char-
acter to include such insurance, then under the established
rules of construction it must be held to authorize and permit

it. In Endlich on the Interpretation of Statutes, Section 112, the rule is stated thus:

"Except in some few cases where a statute has fallen under the principle of excessively strict construction the language of a statute is generally extended to new things which were not known and could not have been contemplated by the Legislature when it was passed. This occurs when the act deals with a genus, and the thing which afterwards comes into existence is a species of it."

And this rule of statutory extension has been recognized and followed by this court in numerous cases. In *Corwin* v. *Benham*, 2 Ohio St., 43, Ranney, J., says:

"I am aware that the usual import of words is sometimes to be restricted, when it would otherwise obviously extend beyond the subject matter and spirit of the whole enactment. But this can not be done because the Legislature did not foresee or contemplate every case upon which it might operate.
"The wisest legislators would fall far short of such foresight. If within the language, it must appear clearly to the court that the case would have been excluded from its operation if foreseen."

And in *Stetson* v. *Bank*, 2 Ohio St., 175, speaking of this rule, it is said:

"Falling within the positive provisions of the law, it is not enough to exclude this case from its operation to say it was not contemplated when the law was enacted. We must be able to see some reason to suppose it would have been excluded in positive terms, if it had occurred to the minds of the Assembly at the time." To the same effect are *Goshorn* v. *Purcell*, 11 Ohio St., 649; *Morris* v. *Williams*, 39 Ohio St., 558; and *Railway Co.* v. *Telegraph Assn.*, 48 Ohio St., 423.

A further reason assigned by relator why foreign life insurance companies may not be permitted to do an employers' liability insurance in this state is, that by Section 3641b, Revised Statutes, insurance companies other than life have been specially authorized and empowered to transact this kind of business in Ohio, thereby it is argued, manifesting a legislative intent to limit and restrict the transaction of such insurance business in this state to companies other than life. If we are right in the conclusions above reached, this contention is sufficiently answered by the fact that employers' liability insurance is in-

cluded in the provisions of Section 3596, permitting insurance against accidents; and the right of life insurance companies to make such insurance is in no wise affected or modified by the provisions of said Section 3641*b*, which was subsequently enacted.

There can be no doubt as to the power of the Legislature to prescribe the terms and conditions upon which foreign corporations may be admitted to do business in this state, or of its right to define the kind of business that may be done by such corporations. It was held in *Western Union Tel. Co.* v. *Mayer,* 28 Ohio St., 521, that:

"Foreign corporations can exercise none of their franchises or powers within this state, except by comity or legislative consent. That consent may be upon such terms and conditions as the General Assembly under its legislative power may impose."

However, a consideration of the legislation in Ohio touching the rights of life and accident insurance companies organized under the laws of another state and doing business in this state, will show that it has not been and is not the policy of our law to discourage or prohibit such companies from engaging in or doing an accident insurance business in this state; nor can there be found any statutory inhibition whereby the right of such companies to insure against accidents, is limited or restricted to risks by accident to the person assured, but on the contrary the right conferred is to take such risks as are in anywise connected with or appertaining to accident to persons. It follows, therefore, that so long as the defendant company confines itself to insurance against accidents to persons, and its contract is one to indemnify the assured against loss by accidental injury to a person in whom the assured has an insurable interest, because legally liable for the results of such accident, that such risk is clearly one "connected with and appertaining to accidents to persons," and is therefore within the legitimate scope of the power and authority possessed by such company by virtue of Section 3596, Revised Statutes.

2. The conclusion above reached, viz., that under favor of Section 3596 life insurance companies may rightfully be licensed and permitted to transact within this state the business of employers' liability insurance, is sufficient to determine the

only question presented in this case, and renders unnecessary a consideration of relator's second proposition. However, referring to the claim made upon this proposition, we may say: That inasmuch as the business of employers' liability insurance is not unauthorized or prohibited in Ohio, but such business is expressly recognized and permitted by our statutes, we incline to the view that in the absence of affirmative statutory provision prohibiting life insurance companies from engaging in such business, that a life insurance company organized under the laws of a sister state and authorized by its charter to write employers' liability insurance, may by the law of comity be licensed and permitted to write such insurance in this state upon complying with the requirements of the statutes of this state as to deposits, etc., even though the right to transact that particular kind of insurance may not have been exercised by, or conferred upon domestic life insurance companies by positive statutory grant. If the business is within the charter powers of such foreign company, it is enough that such business is not prohibited in this state, is not obnoxious to the policy of our laws, and is not against the interests of our citizens. It is said by the Supreme Court of Illinois in *People* v. *The Fidelity and Casualty Co.,* 153 Ill., 25:

"The rule is, that where there is no positive prohibitive statute, the presumption, under the law of comity that prevails between the states of the Union, is that the state permits a corporation organized in a sister state to do any act authorized by its character or the law under which it is created, except when it is manifest that such act is obnoxious to the policy of the law of this state."

Again, in *Colwell* v. *Springs Co.,* 100 U. S., 55, it is said:

"If the policy of the state or territory does not permit the business of the foreign corporation in its limits, * * * it must be expressed in some affirmative way; it can not be inferred from the fact that its Legislature has made no provision for the formation of similar corporations," etc.

The views thus expressed are in harmony with our laws and in accord with the recognized policy of this state. As said in argument by counsel for defendant in this case, "it is not the policy of this state to repel or discourage solvent, reputable foreign corporations from doing business within its borders, and

the courts will not anxiously seek an excuse in the statutes to drive them out.''

We are of the opinion that the facts stated in the petition in this case are not sufficient in law to entitle the relator to the relief and judgment therein asked. The demurrer of defendant is therefore sustained and the petition of relator dismissed.

*Judgment accordingly.*