Continental National Bank and Trust Company, as Trustee Under the Last Will and Testament of William E. Phillips, Deceased, Appellant, v. Charlotte D. Reynolds and Peter F. Reynolds, Appellees.

Gen. No. 38,252.

Opinion filed July 3, 1936.

EDWIN TERWILLIGER, of Chicago, for appellant.

DENIS E. SULLIVAN, JR., and MILTON M. HERMANN, both of Chicago, for appellees; MILTON M. HERMANN and JOSEPH KRAVITZ, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

After plaintiff had obtained judgment by confession on a mortgage note, defendants, on petition, were

granted leave to appear and defend and later filed a verified answer. Trial was had before the court without a jury, resulting in findings and judgment in favor of defendants, and an order was entered vacating and setting aside the judgment by confession and dismissing the suit at plaintiff's costs. This appeal followed.

The essential facts are undisputed. It appears from the record that May 24, 1920, defendants executed a mortgage note for $14,000, due three years thereafter and containing the following clause:

"And if the time of payment of this note or any part thereof shall hereafter be extended by any agreement made by the legal holder hereof, the liability of the maker hereof shall continue in accordance with the terms of such agreement, with or without notice of such extension."

The trust deed securing the note contained a covenant to pay the indebtedness and interest as provided in said notes, "or according to any agreement extending the time of payment thereof." March 24, 1921, defendants conveyed the mortgaged premises to Ernst Boverman and wife by warranty deed which contained a clause whereby the purchaser agreed to assume and pay the mortgage. Thereafter, on January 16, 1923, Boverman and wife conveyed the property to Lipsie and Glickman, "subject to" the mortgage. It appears that plaintiff never had any dealings with the Bovermans, and there is no evidence that it had any notice or knowledge of the assumption of the mortgage debt by the Bovermans. When the note became due, May 24, 1923, Lipsie and Glickman, who were then owners of the equity, signed an instrument in writing purporting to be an extension agreement, which was introduced in evidence as exhibit "A." This instrument was signed by them only, was not assented to or signed by the bank, and contained no promise or under-

taking whatsoever by the bank. When introduced in evidence the signatures of Lipsie and Glickman were stamped "cancelled" in large letters across the face of the instrument.

May 24, 1926, Lipsie and Glickman executed a second extension agreement, introduced in evidence as exhibit "B," which contained the following provision:

"Now these presents witnesseth, that in consideration of the extension of the time of payment by said Continental & Commercial Trust & Savings Bank of said principal indebtedness evidenced by said note, the undersigned, who have assumed the payment of said principal indebtedness, hereby covenant and agree to pay the Continental & Commercial Trust & Savings Bank, or its order, the sum of $14,000.00, evidenced by the said note, on the 24th day of May, 1931, with interest thereon from the 24th day of May, 1926, at the rate of six per cent per annum, payable semi-annually on the 24th day of November and of May in each year during said extended period."

The extension agreement also provided that "interest on the principal indebtedness for said extended period is further evidenced by ten interest notes of $420 each." On the reverse side of the agreement there appeared the following, signed by E. R. McFadden, assistant secretary of the bank:

"In consideration of the execution of the foregoing instrument, Continental & Commercial Trust & Savings Bank has extended the time of payment of the note therein mentioned, as stated in said instrument.

"CONTINENTAL & COMMERCIAL TRUST & SAVINGS BANK

By E. R. McFadden,

Its Assistant Secretary."

It appears from the record that prior to the execution of this agreement Lipsie had applied to the bank for an extension and on March 9, 1926, received from the bank the following letter:

"We will be pleased to renew the first mortgage real estate loan on the premises owned by you at 939 Windsor Avenue in the amount of $14,000 for a period of five years without any prepayment on the principal during this time, interest to be at the rate of six per cent, commission one and one-half per cent without any further charges." When the extension agreement was signed, Lipsie and Glickman paid the bank a consideration of $210 for the extension, and the agreement together with the ten interest notes signed by Lipsie and Glick was attached to the mortgage. Lipsie and Glickman thereafter paid the interest coupons at their respective maturity dates.

May 5, 1931, Lipsie and Glickman executed a third instrument purporting to be an extension agreement, which was introduced in evidence as exhibit "C." This instrument was signed by them alone, recited no consideration and was not executed or consented to by the bank. It contained the following provision:

"Nothing herein contained shall be construed as a novation or as in any way modifying, altering, affecting, releasing or limiting the liability, whether primary or secondary, of any person for the payment of any sums secured to be paid by said trust deed, but the right of recourse against every such person is hereby expressly reserved."

In November, 1933, plaintiff filed its bill to foreclose the mortgage. Defendants, although made parties to the proceeding, could not be served with summons, and on final decree they were dismissed from the suit without prejudice to the right of plaintiff to sue at law on their personal liability. The foreclosure suit proceeded to a decree, entered April 23, 1934. The mortgage was executed under the law of 1917, and therefore no sale could be had until July, 1935. Before instituting the present suit plaintiff offered in writing to assign its foreclosure decree to defendants upon payment of the amount due on the note.

The complaint alleges the execution of the note sued on and sets forth the provision hereinbefore quoted relating to the continuing liability of the maker in the event of any extension agreement, with or without notice of such extension. Defendants filed five pleas by way of defense. They first admitted the execution of the note, averred that defendants had conveyed the real estate securing the mortgage to one Boverman by a deed containing a clause whereby the grantee assumed payment of the mortgage, that Boverman then conveyed the property to Lipsie and Glickman by deed, "subject to the mortgage," and that they were the owners of the equity on May 24, 1923, when the mortgage note matured; that Lipsie and Glickman on the latter date executed a certain instrument in writing purporting to be an extension agreement, identified as exhibit "A." Similar allegations are made with reference to the other instrument in writing purporting to be an extension agreement, identified as exhibit "C." The plea further avers that on May 24, 1926, Lipsie and Glickman executed an extension agreement, identified as exhibit "B," containing on the reverse side thereof the consent of the Continental & Commercial Trust & Savings Bank to an extension in accordance with the statement contained in the instrument. It is further averred that plaintiff knew or should have known that by the terms of the warranty deed from defendants to Boverman the grantees assumed and agreed to pay the indebtedness, and that by virtue of the assumption clause the grantees became the principal obligors for the payment of the indebtedness by operation of law, and the defendants sureties therefor; that the execution of the instruments in writing identified as exhibits "A," "B" and "C" was without the knowledge or consent of defendants, and thereby the terms and conditions of the defendants' obligations under the promissory note and trust deed were

materially altered and varied and that defendants were thereby discharged.

The second plea made like averments with reference to the transfer of title to Boverman and to Lipsie and Glickman, and alleged that exhibit "A" was executed by Lipsie and Glickman but not by the then holder and owner of the promissory note or by any person other than Lipsie and Glickman, and "that said instrument was unilateral in character, and never became a binding obligation upon the holder or owner of the note." Similar allegations are made as to exhibit "C." The second plea further alleges that exhibit "B" was unilateral in character in that it embodied the undertaking and promises of Lipsie and Glickman alone, and never became a binding obligation upon the holder and owner of the note, and "there being no valid extension agreement," a cause of action accrued on the note on May 24, 1923, the original maturity date, and was barred by the statute of limitations.

The third plea made substantially the same allegations as the second plea, and averred that defendants were not parties to any of the extensions, and that nothing contained in exhibits "A," "B" or "C" precluded plaintiff from bringing suit against defendants on the cause of action when it accrued May 24, 1923, and that plaintiff's failure so to do constituted a bar under the statute of limitations.

The fourth plea alleged that plaintiff had filed its bill to foreclose the trust deed in November, 1933, that the decree of foreclosure was entered in April, 1934, under which no sale could be held until July, 1935, and that by reason of the premises plaintiff had elected to proceed solely against the land and was precluded from maintaining this action.

The fifth plea alleged the same facts relating to the foreclosure proceeding, and averred that the land was the primary fund for the payment of plaintiff's debt,

and that by reason of the fact that a foreclosure sale had not yet been held, plaintiff had not exhausted its remedies, and hence this action was premature.

To sustain the judgment rendered in their favor defendants take the position that a mortgagor who conveys the incumbered premises to one who expressly assumes and agrees to pay the mortgage debt becomes a surety therefor by operation of law, and the execution of an agreement between the mortgagee and grantee, without the consent of the mortgagor, extending the time of payment of the debt, discharges the personal liability of the mortgagor. It is first argued that the execution of *three* extension agreements without the consent of defendants is not within the terms of the note and trust deed executed by them, and "accordingly, if the three instruments executed by Lipsie and Glickman are regarded as valid and binding extension agreements, the defendants were released from all liability." As a basis for this argument, defendants contend that the clause in the note, hereinbefore quoted, providing that if the payment of the note or any part thereof should, after the date of its maturity, be extended by *any* agreement made by the legal holder of the note, the liability of the maker thereof shall continue in accordance with the terms of such agreement, with or without notice of such extension, authorized but *one* extension agreement, and no more, and that if several extension agreements were entered into without the consent of defendants the latter were discharged from all liability on the principle that under the law of suretyship a material alteration of the contract made by the principal debtor and his creditor, without the consent of the surety, will discharge the latter from all liability. In order to make this argument available as a defense, defendants are forced to take the inconsistent position of first averring in their plea "that by reason of the non-execution of said in-

strument by the then holder and owner of the aforesaid promissory note, said instrument was unilateral in character and never became a binding obligation upon the said holder and owner of said promissory note,'' and then arguing in their brief that if the three instruments executed by Glickman and Lipsie be regarded as valid and binding extension agreements defendants were released from liability. As applicable to this contention plaintiff advances the proposition that an extension agreement, to discharge a nonconsenting surety, must be a contract mutually binding on both creditor and principal debtor, based on a consideration, and be such as to preclude the creditor from suing for a definite period and that a forbearance or extension without a binding contract is not sufficient. Several cases so holding are cited to support this contention. (*Hide & Leather Nat. Bank v. Alexander,* 184 Ill. 416; *Field v. Brokaw,* 148 Ill. 654, 671; *United States Printing Co. v. Linn Co.,* 170 Ill. App. 250.) However, in view of defendants' pleas that the first and third extension agreements in point of time, as evidenced by exhibits ''A'' and ''C'' were unilateral in character ''and never became a binding obligation upon the holder and owner of said promissory note'' by reason of the nonexecution of said instruments by plaintiff, we may assume the concession on the part of defendants that neither of these instruments were valid extensions, and therefore there is in issue only the validity and effect of one extension agreement—the second in point of time,—which was based upon a valid consideration and consented to by plaintiff as owner and holder of the notes. As a result of this conclusion defendants are in the position of conceding, as they must, that the note authorized at least one extension and that there was only one valid and binding extension agreement, and it becomes a moot question whether the language of the note should

be construed strictly or not and whether it author-
ized more than one extension.

Notwithstanding this conclusion we have carefully
examined the authorities cited by plaintiff holding in
effect that the use of the word "any" in the phrase
"any agreement," etc., was in its usual broad dis-
tributive sense, indicating lack of limitation and as
the equivalent of, and synonymous with, the words
"each" or "every." In *Bonart v. Robito,* 141 La. 970
(76 So. 166), the court said that they could not con-
ceive of any reasonable theory on which to hold that
the consent, as expressed in the note sued on, author-
ized the payee to grant the maker only one extension
of the final payment, however long, and did not author-
ize two extensions, however short; that to maintain
such a doctrine would lead to the anomalous conclusion
that the indorser would not have been released if the
payee had granted to the maker of the note, without
notice to the indorser, one extension of the time of
payment for one year, but that the indorser would
have been released by the granting of two extensions
for one month, or one week, or one day each. The
court there interpreted the indorser's consent that
time of payment might be extended without notice to
mean that the payee and the maker of the note could
agree to extend the payment from time to time with-
out notice to the indorser and without releasing the
indorser from liability, unless and until at any time
after maturity the indorser saw fit to pay the note and
become immediately subrogated to the right of action
against the maker. Plaintiff cites Webster's Interna-
tional Dictionary; Bouvier's Law Dictionary, and
numerous cases in Illinois and other States supporting
the argument that the word "any" as employed in
connection with the note herein is used in its usual
sense to indicate the equivalent of "each" or "every."
(*People v. VanCleave,* 187 Ill. 125, 134; *People v. Fidel-
ity & Casualty Co.,* 153 Ill. 25, 36; *West Chicago Park*

*Com'rs v. McMullen,* 134 Ill. 170, 179; *State Nat. Bank of Ft. Worth v. Vickery* (Tex. Com. App.), 206 S. W. 841.) After a careful consideration of these authorities we have reached the conclusion that "any extension" as here used should not receive the narrow interpretation sought to be placed on the language thus employed, but should rather be interpreted in the ordinary sense of "each" and "every" extension, without limited numbers. If the parties had intended to limit the right of the holder of the note to grant time they could easily have expressed their intention by using other language, such as "an extension," or "one extension," or have placed a time limit on the authority of the holder to extend.

It logically follows from what we have said that the only valid extension was the second in point of time, as evidenced by exhibit "B," and since the note contained the express provision that if the time of payment thereof be extended by agreement made by the legal holder thereof, the liability of the maker shall continue in accordance with the terms of such agreement, with or without notice of such extension, defendants' plea that they had no notice of this second extension is untenable and their entire argument, based upon the assumption that all three agreements were valid, notwithstanding their denial of the validity of the first and third agreements, and the consequent effect of the words "any agreement," falls of its own weight. We hold, therefore, that of the three extension agreements the second only was valid, and that under the provisions of the note defendants' liability, with or without notice of the extension, was not in anywise affected thereby.

The second major defense interposed was that plaintiff's action is barred by the statute of limitations. As to this defense it is argued that "if the three instruments executed by Glickman and Lipsie (exhibits 'A,' 'B' and 'C') are not valid and binding contracts,

the plaintiff's cause of action on the promissory note sued upon was barred by the statute prior to the commencement of this cause.'' Thus defendants, after first arguing that the agreements are all valid, notwithstanding their denial of the validity of two of them, now take the position, as their second ground of defense, that none of the extensions was valid; that the indebtedness therefore became due at maturity in 1923, and since no suit was brought thereon within 10 years the action is barred by the statute. In view of our conclusion as to the validity of the second extension it becomes unnecessary to give further consideration to this argument.

The remaining point urged in defendants' brief is that the action is barred by an election of remedies and that in any event it is premature. It is argued that prior to the commencement of this cause plaintiff had made an election of remedies by causing a certificate of indebtedness to be issued pursuant to a decree of foreclosure, and while conceding that the remedies of the mortgagee are concurrent and not exclusive in their nature, defendants say ''that a point may be reached in the enforcement of any one of these so-called concurrent remedies at which we are bound to regard the mortgagee as having made his irrevocable choice of the remedies available to him. Such a point, we believe, has been reached in this case.'' No authorities are cited to support defendants' position. The offer of plaintiff to assign to defendants a complete decree of foreclosure, with all costs amounting to $1,100 paid, is sufficient assurance that plaintiff has no intention of collecting its debt twice, and even if it should attempt to collect its debt both out of the land and by judgment against defendants, the latter's remedy is clearly pointed out in *Silberman v. Becklenberg,* 279 Ill. App. 250.

Defendants' obligations under the promissory note were altered only once, by the valid agreement of ex-

tension made on May 24, 1926, and by the terms of this note they were not discharged by the alteration because of their prior consent. Their obligation was continued by the express language of the note. The action is not barred by the statute of limitations nor by an election of remedies on the part of plaintiff.

We think the court erred in entering judgment in favor of defendants and against plaintiff for costs, and since there is no dispute as to the facts, most of which were stipulated, it will be unnecessary to remand the cause for a new trial. Accordingly, the judgment of the circuit court is reversed and the judgment by confession, entered August 11, 1934, the amount of which is admitted to be correct, is confirmed.

*Judgment of the circuit court reversed, and judgment by confession of August 11, 1934, confirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.