**Anna Brosius, Appellee, v. Carl O. Madsen et al. Appeal of Earl L. Weinstock and Adeline M. Weinstock, Appellants.**

**Gen. No. 40,093.**

Heard in the third division of this court for the first district at the April term, 1938. Opinion filed October 26, 1938. Rehearing denied November 9, 1938.

HURFORD & FEIGENHOLTZ, of Chicago, for appellants; HAROLD L. FEIGENHOLTZ and SIDNEY RUBIN, of Chicago, of counsel.

WILLIAM N. BRADY, of Chicago, and J. V. SCHAFFENEGGER, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This in an appeal by Earl L. Weinstock and Adeline M. Weinstock from a decree of foreclosure entered on May 12, 1937, sustaining objections to the master's report and finding these defendants to be personally liable for the amount of any deficiency which may be shown after sale, and from the decree entered on December 29, 1937, overruling objections to the judicial sale and entering a personal deficiency judgment against the named defendants.

On September 18, 1934, the plaintiff, Anna Brosius, exhibited her complaint to foreclose the trust deed herein involved. It appears from the allegations of the complaint that the defendants appealing did after the execution of the trust deed in question, convey the real estate involved to Carl O. Madsen and Tina Madsen; that on December 16, 1929, an extension agreement was made and executed by Carl O. and Tina Madsen, by the terms of which the maturity of the indebtedness was extended, and that they did assume and agree to pay the debt; that subsequently, on December 16, 1932, the maturity of the indebtedness was again extended by an agreement made and executed by Carl O. and Tina Madsen, and that they again assumed and agreed to pay the indebtedness, and the plaintiff in the foreclosure proceeding prays that a personal deficiency be decreed against the defendant or defendants personally liable therefor.

The trust deed, the subject of this foreclosure proceeding, conveys the real estate involved subject to a

condition of defeasance from the mortgagors, Earl L. Weinstock and Adeline M. Weinstock, to Max K. Meyer, as trustee, and provides: ''That the grantors covenant and agreed to pay said indebtedness and the interest thereon as herein and in said note provided, or according to any agreement extending time of payment.''

The defendants, Earl and Adeline Weinstock, thereafter exhibited their appearance and answer in which they allege two extensions of the indebtedness without their knowledge or consent and the assumption of the debt by their grantees, Carl O. and Tina Madsen; that Carl O. and Tina Madsen filed their joint answer, and the cause was referred to a master in chancery of the circuit court to consider such evidence as might be presented in support of the complaint and the answer thereto. After a hearing of the evidence submitted to the master, he prepared and filed his report in which he found that the defendants, Earl L. Weinstock and Adeline M. Weinstock, conveyed their fee simple title to the real estate to Carl O. and Tina Madsen, who did procure two extensions of the maturity of the indebtedness, and, by agreement, had assumed and agreed to pay the mortgage debt.

The master further found the parties stipulated that Carl O. Madsen if present would testify these defendants had no knowledge of the extensions, and further found in his report that by virtue of the conveyance by these defendants to the Madsens, and the execution of the extensions without the knowledge or consent of these defendants and the assumption of the debt by the Madsens, these defendants, Earl L. Weinstock and Adeline M. Weinstock, have been released from liability to the plaintiff.

Objections were filed by the plaintiff to the master's report, which were overruled by the master and allowed to stand as exceptions before the court. Upon

due consideration, the court sustained the exceptions filed to the master's report, and a decree of foreclosure and sale was entered on May 12, 1937, decreeing these defendants, Earl L. Weinstock and Adeline M. Weinstock, to be personally liable for any deficiency which may be shown to exist after sale. A sale was had pursuant to said decree on November 2, 1937, resulting in a deficiency in the aggregate sum of $3,553.58.

Objections filed by these defendants to the sale and report of sale were, by order of court of December 29, 1937, overruled. A decree was entered approving the master's report of sale and distribution, and the court entered a deficiency decree against the defendants Earl L. Weinstock and Adeline M. Weinstock, and also Carl O. and Tina Madsen, and it is from this decree and the decree of foreclosure and sale that the defendants Earl L. Weinstock and Adeline M. Weinstock, have prosecuted this appeal.

The contention of the defendants is that the relationship of the parties to this cause is analogous to an express suretyship agreement and the agreements extending the time of payment of the mortgage indebtedness by the mortgagee with the mortgagors' grantees without their knowledge or consent discharge the mortgagors from their liability to the mortgagee.

The liability assumed by the mortgagors when they signed the trust deed depends largely on the words used in the instrument. At the time the mortgagors executed the trust deed, as we have already pointed out, it provided among other provisions relating to the transaction that—"The grantors covenant and agree to pay said indebtedness and the interest thereon as herein and in said note provided, or according to any agreement extending time of payment."

The words used in the agreement did not restrict the extension of the mortgage loan, and by such restriction relieve the defendants, Earl L. Weinstock and

Adeline M. Weinstock as the makers of the notes when they conveyed the title to the real estate, which was security, as evidenced by the trust deed executed by the makers at the time the deed was delivered.

This very question has been passed upon by courts of appeal, and one of the cases that has been considered by the Appellate Court is that of *Kent v. Rhomberg,* 288 Ill. App. 328, which involved a trust deed, containing an agreement on the part of the mortgagor, in which the phraseology is somewhat similar to the language of the trust deed involved in this case, and in passing upon the questions called to the attention of the Appellate Court, we said:

"We are of the opinion that the reasoning in the case from which we have just quoted is applicable to the cause here on appeal. There is no language which limits or qualifies the extension of time of payment in the trust deed in question, but the words used are very broad when it appears from the trust deed that the time of payment of the indebtedness may be extended according to any agreement which might be entered into for that purpose. The language not alone applies to an extension agreement that might have been had between the plaintiff and the defendants, but applies equally well to the extension agreement entered into between the plaintiff and Williams, the successor to title of the defendants by their deed."

From an examination of the opinion of the court, it is apparent that the language of the trust deed does not limit the number of extensions or the time when an extension agreement might be had between the plaintiff in this case and the successor in title to the defendants.

In the case of *Continental Nat. Bank & Trust Co. v. Reynolds,* 286 Ill. App. 290, the court considered the necessary construction to be given the words as used in the trust deed. In the case here on appeal it was

stated that—''The grantors covenant and agree to pay said indebtedness and the interest thereon as herein and in said note provided, or according to any agreement extending time of payment.'' In discussing the construction of the word ''any,'' this court in the above cited case said:

'' . . . We have carefully examined the authorities cited by plaintiff holding in effect that the use of the word 'any' in the phrase 'any agreement,' etc., was in its usual broad distributive sense, indicating lack of limitation and as the equivalent of, and synonymous with, the words 'each' or 'every.' In *Bonart v. Robito,* 141 La. 970 (76 So. 166), the court said that they could not conceive of any reasonable theory on which to hold that the consent, as expressed in the note sued on, authorized the payee to grant the maker only one extension of the final payment, however long, and did not authorize two extensions, however short; that to maintain such a doctrine would lead to the anomalous conclusion that the indorser would not have been released if the payee had granted to the maker of the note, without notice to the indorser, one extension of the time of payment for one year, but that the indorser would have been released by the granting of two extensions for one month, or one week, or one day each. The court there interpreted the indorser's consent that time of payment might be extended without notice to mean that the payee and the maker of the note could agree to extend the payment from time to time without notice to the indorser and without releasing the indorser from liability, unless and until at any time after maturity the indorser saw fit to pay the note and become immediately subrogated to the right of action against the maker. Plaintiff cites Webster's International Dictionary; Bouvier's Law Dictionary, and numerous cases in Illinois and other States supporting the argument that the word 'any' as employed in con-

nection with the note herein is used in its usual sense to indicate the equivalent of 'each' or 'every.' (*People v. VanCleave,* 187 Ill. 125, 134; *People v. Fidelity & Casualty Co.,* 153 Ill. 25, 36; *West Chicago Park Com'rs v. McMullen,* 134 Ill. 170, 179; *State Nat. Bank of Ft. Worth v. Vickery* (Tex. Com. App.), 206 S. W. 841). After a careful consideration of these authorities we have reached the conclusion that 'any extension' as here used should not receive the narrow interpretation sought to be placed on the language thus employed, but should rather be interpreted in the ordinary sense of 'each' and 'every' extension, without limited numbers. If the parties had intended to limit the right of the holder of the note to grant time they could easily have expressed their intention by using other language, such as 'an extension,' or 'one extension,' or have placed a time limit on the authority of the holder to extend.''

Applying the construction given the word ''any'' as used in connection with the agreement signed by the makers of the trust deed, as well as the notes, the defendants agreed they would pay the indebtedness and the interest thereon according to any agreement entered into by the holders of title extending the time of payment. So we are of the opinion that the court did not err in entering the deficiency appearing in the record against the defendants here on appeal.

While it is true the Madsens as successors in title to these defendants assumed payment of the mortgage, still by their assumption, failure to pay did not release Earl L. Weinstock and Adeline M. Weinstock from liability.

The defendants here on appeal also contend that the court erred in overruling objections of the defendants to the sale of the property in question. From what we have before us it appears the real estate was sold for $1,500 and that the complainant alleged the value of the property did not exceed $2,000. In the objec-

tions to the sale filed by the defendants there are no figures from which the court can determine the actual value of the property, and whether, upon a further sale, a greater sum could be realized.

The case of *Straus v. Anderson*, 366 Ill. 426, cited by the defendants, does not afford any guidance, inasmuch as it presented a situation where a bondholders' committee had obtained control of the fee and was interested in eliminating nondepositing bondholders instead of having the property bring as high a price as possible to satisfy the debt. We there said: ''When some of the creditors organize for the purpose of acquiring the ownership of the property to the exclusion of those not participating in the re-organization, rather than for presently obtaining the debt, or some part of it, due them in money, the situation changes. It is obvious that the interest of the bondholders' committee here was to buy the property at as low a price as possible and likewise, equally apparent, that the interest of the non-depositing bondholders was to have the property bring the highest possible price at the sale.''

The case of *Levy v. Broadway-Carmen Bldg. Corp.*, 366 Ill. 279, also called to our attention by the defendants, involved no question of nondepositing bondholders, but the lower court refused to approve a bid of $50,000 on property that had been purchased for $135,000. The Supreme Court disapproved the action of the chancellor and ordered the sale confirmed.

It is true the chancellor upon questions of like character has a broad discretion in passing upon the acts of the master and approving or disapproving his acts with reference to sales under decrees, and such discretion unless abused will not be interfered with by a court of review. *Moeller v. Miller*, 315 Ill. 454; *Roberts v. Goodin*, 288 Ill. 561.

The record is silent as to what the property was reasonably worth, so that we are without means to

consider any discrepancy between the actual value of the property and the amount of the bid. The failure of the defendants to introduce evidence of this fact deprives us of the consideration of such facts as might be helpful in determining what the property was reasonably worth and whether the bid was such that the court would consider the facts and determine that the property had been sold at a fair price.

The court having considered the questions in the matter regarded as important and having found that the court did not erroneously approve this sale, either as to the value of the property or as to the rights of the parties in the foreclosure proceeding, the decree is affirmed.

*Decree affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.