## McMurray et al. *v*. Brown.

Where a party furnished materials for the construction of a building, under an agreement that the owner thereof, by way of payment for them, would convey to him certain real estate at a stipulated price per foot, — *Held,* that on the refusal of the owner so to convey, or in lieu thereof to pay for such materials, the party is entitled to his lien, provided that in due time he gives the notice required by law.

Appeal from the Supreme Court of the District of Columbia.

This was an action to enforce a mechanics' lien under sect. 1 of the act of Congress approved Feb. 2, 1859, 11 Stat. 376, which provides, " That any person who shall hereafter, by virtue of any contract with the owner of any building, or with

the agent of such owner, perform any labor upon, or furnish any materials, engine, or machinery for the construction or repairing of, such building, shall, upon filing the notice prescribed in sect. 2 of this act, have a lien upon such building and the lot of ground upon which the same is situated for such labor done, or materials, engine, or machine furnished, when the amount shall exceed twenty dollars."

The second section provides, "That any person wishing to avail himself of this act, whether his claim be due or not, shall file in the office of the clerk of the Circuit Court of the District of Columbia at any time after the commencement of the said building, and within three months after the completion of such building or repairs, a notice of his intention to hold a lien upon the property declared by this act liable to such lien for the amount due or to become due to him, specifically setting forth the amount claimed. Upon his failure to do so, the lien shall be lost."

Mrs. McMurray, one of the defendants, was indebted to the complainant in the sum of $1,230.62 for materials furnished by him in the construction of two dwelling-houses on lots belonging to her in the city of Washington, under an agreement, that, upon the delivery of said materials, she would, in payment therefor, convey to him, at the rate of forty-five cents per square foot, certain real estate situate in said city. She subsequently refused to comply with the agreement, but promised to pay him the amount of his bill in cash.

No payment having been made, he, on the 13th of February, 1872, the houses then being uncompleted, gave the required notice of his intention to hold the property subject to his lien.

The court below rendered a decree in favor of the complainant; from which an appeal was taken to this court.

*Mr. James S. Edwards* for the appellants.

It is insisted as matter of law, that the complainant, upon his own showing, is not entitled to relief. "Where there is a special contract between a mechanic and the owner or builder of a house for the work which the former is to do in constructing the house, he must look to his contract alone for his security, and cannot resort to the remedy which the me-

chanics' lien law provides." *Haley* v. *Prosser*, 8 W. & S. 133; *Grant* v. *Strong*, 18 Wall. 623.

The complainant must have been entitled to file his lien when the contract was made. He can do nothing afterwards to alter his position. *Hoatz* v. *Patterson*, 5 W. & S. 537.

He clearly had no right to file his lien when the alleged agreement was made; for, by its terms, Mrs. McMurray was to convey a certain lot in exchange for the material furnished. His action for a breach of the contract is by a different proceeding. He has a remedy at law; no standing here.

*Mr. Edwin L. Stanton* for the appellee.

It is submitted that the facts show a contract within the statute; but the appellant insists "that the complainant, upon his own showing, is not entitled to the relief he seeks, for the contract upon which he relies is a *special* one." In support of this proposition, he cites the cases of *Haley* v. *Prosser*, 8 W. & S. 133; *Hoatz* v. *Patterson*, 5 id. 537; *Grant* v. *Strong*, 18 Wall. 623.

The two former decisions "were a surprise to the profession, acted almost as a nullification of the law, and were followed by an act of the legislature extending the lien to all cases of contracts." Phill. on Mech. Liens, 166, citing *Lay* v. *Millette*, 1 Phila. 513; *Russell* v. *Bell*, 44 Penn. 47.

*Grant* v. *Strong* in no manner supports the proposition, that, when a special contract has been made, the material-men or laborers have no lien.

The complainant, having no other security, was not deprived of his lien by reason of agreeing to accept land instead of money for his materials. There is no distinction in principle between an agreement to pay money or property which can possibly affect the remedy provided. Phill. on Mech. Liens, 182; *Campbell & Kennedy* v. *Scaife et al.*, 1 Phila. 187; *Haviland* v. *Pratt*, id. 364; *Hinchman* v. *Lybrand*, 14 S. & R. 32; *Reiley* v. *Ward*, 4 Iowa, 21.

Mr. Justice Clifford delivered the opinion of the court.

Mechanics or other persons, who, by virtue of *any contract* with the owner of any building, or with the agent of such owner, have, since the 2d of February, 1859, performed labor,

exceeding the value of twenty dollars, upon such building, or have furnished materials, engine, or machinery exceeding that value, for the construction or repairing of such building, shall, upon filing the notice prescribed in the second section of the Lien Act of that date, have a lien upon such building, and the lot of ground upon which the same is situated, for such labor done, or materials, engine, or machinery furnished. 11 Stat. 376.

Building materials of great value, such as bricks and lumber, were furnished by the complainant to the first-named respondent, by virtue of a verbal agreement, as he alleges, between him and the husband of the respondent, acting as her agent.

Service was made, and the respondent appeared, and by her answer admitted the averments of the first, second, fourth, and seventh paragraphs of the bill of complaint, but denied every other material allegation which it contains.

Proofs were taken; and, the parties having been fully heard, the judge, at special term, entered a decree that the complainant recover of the respondent the sum of twelve hundred and thirty dollars and sixty-two cents, with interest, as therein provided; and that the described real estate, — to wit, lots numbered thirty-six and thirty-seven, — together with the buildings and improvements thereon, be, and hereby are, subjected to the satisfaction of the complainant's demand.

Due appeal was taken by the respondent to the general term, where the decree of the special term was in all things affirmed; and the respondent appealed to this court.

Two other persons were named as respondents in the bill of complaint who never filed any answer, and are not parties to the decree, for the reason that no relief is sought against them, they having been joined as respondents merely for the purpose of discovery in respect to a prior lien held on the premises by the one named as trustee, to secure a debt due to the other.

Seasonable appearance was entered by the respondent, and she filed an answer; but, the answer having been lost, it is stipulated and agreed between the parties, that the answer, as before stated, admitted all the averments of the first, second, fourth, and seventh paragraphs of the bill of complaint, and that it denied every other allegation of the complainant.

Lumber and bricks were furnished by the complainant for two houses; and the evidence shows that the respondent owned both lots on which the houses were being constructed, and that she was represented throughout the transaction by her husband, who acted as her agent in constructing the houses. Nothing further need be remarked respecting the deed of trust of prior date, as it is admitted by stipulation that the deed is cancelled, and that the debt secured by it is discharged.

Due notice of the intention of the complainant to hold a lien upon the property, as required by the act of Congress, is admitted by the answer; nor is it necessary to discuss the question as to the agency of her husband in the transaction, as that also is admitted by the respondent. What the respondent denies is, that either she, or her agent in her behalf, ever made any such contract with the complainant as that set forth in the bill of complaint, or that the complainant ever furnished and delivered to her or her agent the building materials specified in the bill of particulars annexed to the bill of complaint, or that the materials were ever used by her or by her authority in the construction of the said houses.

Lots thirty-six and thirty-seven belonged to the respondent, and the proof is that they adjoin each other. Prior to the alleged agreement with the complainant, the respondent entered into a contract with another party to build a two-story brick house for her on the lot first named, the contractor agreeing to build the house, and furnish, at his own proper cost and expense, all the materials necessary to complete the same in a workmanlike manner; for which the respondent agreed to pay to the contractor the sum of one thousand dollars, and at the same time to convey to him lot thirty-seven, and to pay the balance, amounting to twelve hundred dollars, in notes of fifty dollars each, payable monthly, at eight per cent interest, to be secured by a deed of trust on lot thirty-six, and the house to be built by the contractor, subject to a prior deed of trust on the same lot. By the record, it appears that the contract, though it bears date the 6th of June, 1871, was not actually executed until about the middle of July following, and that the contractor failed to fulfil the stipulations of the written contract.

Perkins, the contractor, was without means or credit; and

possessed no capital whatever, except his skill as a builder; and the husband of the respondent, though he controlled the real estate standing in the name of his wife, was without any ready means at his command: consequently the materials for completing the house could not be obtained except by exchanging some of the real estate for the same. Detailed account is given, in the testimony, of the measures adopted by the parties to effect such an exchange of real estate for building materials; but it must suffice to say that all of the negotiations failed.

All of these attempts to procure building materials by exchanging real estate for the same took place before the contract for building the house was signed; and, at the close of those attempts, an interview occurred between the contractor under the written agreement and the complainant, when the latter informed the former that he would furnish lumber and bricks in exchange for lot thirty-seven, computing the value of the lot at forty-five cents per foot. Within two hours after the conversation, the former contractor reported the same to the husband of the respondent, and told him to have the deed of the lot made directly to the complainant, and proposed, at the same time, to divide between them the five cents per foot advance in price which the seller would receive beyond the consideration promised by the former contractor.

Abundant evidence is given to show that the offer of the complainant to take conveyance of the lot, and furnish the building materials as required, was accepted by the husband of the respondent; and that he, the agent, agreed that the lot should be conveyed to the complainant as proposed.

Pursuant to that arrangement, which appears to have been fairly and understandingly made, the complainant continued to deliver the required building materials; and the conduct of the husband of the respondent throughout the whole period the materials were furnished and delivered shows to the entire satisfaction of the court that the materials were furnished and delivered in pursuance of that understanding, and that he knew that the owner and furnisher of the same was parting with his property in the just and full expectation that the whole passed to the benefit of his wife under that arrangement. Evidence

to that effect is found in the testimony of several witnesses; and it is not going too far to say that there is nothing in the record worthy of credit to contradict that theory.

Part of the building materials furnished by the complainant before he made his contract with the respondent were used by the first contractor in the erection of a house on lot thirty-seven, which he designed for himself; but the title and ownership of that lot, as well as lot thirty-six, were in the respondent; and on the 1st of November, 1871, she took actual possession of the lot and the unfinished structure thereon which had been commenced by the former contractor, and ever after continued in the possession and control both of the lot and the building.

Nothing further was ever done by the contractor to complete these houses, and the record shows that the same were completed by another contractor employed by the same agent of the respondent. All of the materials for that purpose were furnished by the complainant; and the record also shows that he furnished all the materials used in constructing and completing both houses, except a small part of the bricks, worth perhaps one hundred dollars, which were purchased by the managing agent of the respondent.

Attempt is made by the respondent to controvert the proposition that her agent ever contracted with the complainant to furnish the building materials in question, and to take the conveyance of lot thirty-seven in payment for the same: but the evidence is so full and satisfactory to that effect, that it is not deemed necessary to add any thing to what has already been remarked upon the subject; nor is it of any importance that she had previously agreed to convey the lot to her former contractor, in case he completed the house for her on lot thirty-six, as he had failed to fulfil the contract, and she had dispossessed him of the premises and of the partly-erected house which he had commenced.

Materials for that purpose to a considerable amount had been furnished by the complainant during the progress of the work, while it was under the superintendence of the former contractor: but inasmuch as the title of both lots was all the time in the respondent, and she had lawfully resumed the possession of lot

thirty-seven on account of the failure of the contractor to complete the building on the other lot within the prescribed time, it was entirely competent for the respondent to make the new contract with the complainant, which it is proved she did make through her agent; and, having made the same, she is bound by its terms and conditions just the same as if it had been in writing.

Suppose the facts are so : still it is insisted by the respondent, as matter of law, that the complainant is not entitled to the relief he seeks, for the reason that the contract set up by him is a special contract. The theory is, that the materials having been furnished upon the verbal contract set out in the bill of complaint, that he, the complainant, should furnish the materials, and that she, the respondent, should convey lot thirty-seven to him in payment for the same, that that contract creates no lien, as the materials were furnished solely upon the faith of the special agreement; but the record shows that her agent who made the contract persuaded the complainant to wait for the conveyance until all the materials had been furnished, and that he, the agent, then refused to make the conveyance. Instead of doing as he agreed, having received an offer of fifteen cents per foot for the lot more than the complainant was to allow, he, the agent, promised to pay the complainant the money for the materials, but failed to make good his promise in that regard.

Both houses were completed; and the proof is, that the complainant furnished all the lumber and nearly all the bricks for the purpose, and that he has received no payment for the materials. On the other hand, it appears that the respondent has sold one of the houses for six thousand dollars, and that she and her husband were living in the other.

Other defences failing, her proposition now is, that, where there is a special contract between a mechanic and the owner or builder of a house for the work which the former is to do in constructing the house, he must look to his contract *alone* for his security, and that he cannot resort to the remedy which the lien law provides. Support to that proposition cannot be derived from any thing contained in the act of Congress passed to enforce mechanics' liens, unless the words of the first section

of the act are shorn of their usual and ordinary import and signification.

Persons who perform labor upon, or furnish materials, &c., for, the construction or repairing of a building, *by virtue of any contract* with the owner of the same, or his agent, have a right to the benefit of the lien if he files the notice prescribed by the second section of the act. Certainly the words *any contract* are sufficiently comprehensive to include special contracts as well as contracts which arise by implication, unless the material-man is secured by a deed of trust or mortgage, or in some other form of security repugnant to the theory that he ever intended " to hold a lien under the mechanics' lien law."

Special reference is made by the respondent to two decided cases in Pennsylvania in support of her proposition that the lien law does not extend to special contracts. *Hoatz* v. *Patterson*, 5 W. & S. 538; *Haley* v. *Prosser*, 8 id. 133. Unexplained, it may be admitted that those cases do afford support to the proposition that the State lien law to which they refer did not extend to the debt of a material-man, arising from the sale and delivery of building materials, if furnished under a special contract; but those decisions were never satisfactory to the legal profession of that State, and it is believed are not regarded as safe precedents even in the jurisdiction where they were made. Instead of that, the legislature of the State, on the 16th of April, 1860, passed a declaratory law, which enacts that the true intent and meaning of the provisions of the prior act extend to and embrace claims for labor done and materials furnished and used in erecting any house or other building which may have been or shall be erected under or in pursuance of any contract or agreement for the erection of the same, and that the provisions of the former " act shall be so construed." Since that time, it has been held by the courts of that State to the effect that special contracts, as well as implied, are within the true intent and meaning of the original lien law of the State. *Russell* v. *Bell*, 44 Penn. 36–54; *Reiley* v. *Ward*, 4 Greene (Iowa), 21.

Cases may arise, undoubtedly, where the rights and responsibilities of the parties are so completely defined by the contract, that neither party is at liberty to claim any thing beyond

the terms of the contract, if the contract is in all respects fulfilled. Consequently, lien laws do not in general create a lien in favor of a material-man who has accepted in full a different security at the time the contract or agreement was made. Examples of the kind, such as a trust-deed or mortgage, may be mentioned, which are regarded as a species of security inconsistent with the idea of a mechanics' lien upon the same land for the same debt. *Grant* v. *Strong*, 18 Wall. 623 ; Phill. on Mech. Liens, sect. 117.

Such a security is regarded as inconsistent with the intent of the parties that a mechanics' lien should be claimed by the party furnishing building materials, as the owner may obligate himself to pay in money, land, or any specific article of property ; but, if he does not fulfil his contract by paying in the manner stipulated, the mechanic is entitled to his lien. *Reiley* v. *Ward*, 4 Greene, 22.

If the labor has been performed or the materials furnished, no matter in what the owner agreed to pay, if he has not paid in any way, the laborer or mechanic has a right to resort to the security provided by law, unless the rights of third persons intervene before he gives the required notice.

Contracts of a special character, such as to give a mortgage to the laborer or mechanic, if duly executed under circumstances showing that the claim to a lien was not intended by the parties, may defeat such a claim ; but a mere promise to give such a security, if subsequently broken, will not impair such a right if the requisite notice is given before any right of a third party, as by attachment or conveyance, has become vested in the premises. Laches in that behalf may impair such a right, and it is one which the claimant may waive. Phill. on Mech. Liens, sects. 117, 272.

Liens of the kind, except where the statute otherwise provides, arise by operation of law, independent of the express terms of the contract, in case the stipulated labor is performed or the promised materials are furnished ; the principle being, that the parties are supposed to contract on the basis, that, if the stipulated labor is performed or the promised materials are furnished, the laborer or material-man is entitled to the lien which the law affords, provided he gives the required notice

within the specified time.    11 Stat. 376; Phill. on Mech. Liens, sect. 118.

Viewed in any light, it is clear that there is no error in the record.                                      *Decree affirmed.*