## DILLON *et al.* *v.* KANSAS CITY S. B. RY. CO.

*(Circuit Court, W. D. Missouri, W. D.*   August 18, 1890.)

**INJUNCTION—EMINENT DOMAIN—STATE AND FEDERAL COURTS.**

Under Rev. St. U. S. § 720, which forbids federal courts from staying proceedings in state courts except in bankruptcy matters, a federal court will not, pending a condemnation suit in a state court, enjoin the petitioner from entering upon the land sought to be condemned.

In Equity.

This is an application for the writ of injunction, and grows out of the following state of facts in substance: The Kansas City Suburban Belt Railroad Company heretofore began proceedings in the circuit court of Jackson county, Mo., for the condemnation of the right of way over the Missouri Pacific Railway Company tracks within the corporate limits of Kansas City, in said county. Conformably to the state statute in such case, upon presenting the petition to the circuit court, stating that the two corporations were unable to agree upon the compensation, etc., the court appointed three commissioners to review the premises, and hear evidence, and make report. The commissioners proceeded, and made their report, fixing the compensation at one dollar, and determining the point and manner of making such crossing. To this the Missouri Pacific Railway Company filed exceptions in the state circuit court, the *gravamen* of which was as to the manner of the proposed crossing. On the hearing of the exceptions much evidence was submitted by the parties, and the matter taken under advisement by the state circuit judge. That court having adjourned until term in course, to-wit, October next, the controversy in that court is thus left pending and undetermined. The petitioners, John F. Dillon and Edward D. Adams, now come to this court, and present their petition, stating, in substance, that they

are citizens of the state of New York, and are the trustees of and for certain bondholders, owning and holding $30,000,000 in bonds, secured by a first mortgage on all the lines of railroad known as the Missouri Pacific Railroad, which mortgage bears date November 15, 1880, and is duly recorded in said county. By the terms and conditions of this mortgage these bonds are not yet due, and the right of possession, and the possession in fact, of said mortgaged property remains with the mortgagor, the conditions of the same not having been broken. The bill alleges that the said trustees and mortgagees were not made parties to said condemnation proceedings, nor notified thereof, and asserts, as a matter of law, that in contemplation of the state statute they are owners, or at least part owners, of the Missouri Pacific Railway Company, and entitled to notice, and to be made parties defendant in the condemnation proceeding; that by reason of the proposed appropriation of the right of way over the said Missouri Pacific Railway Company, and especially as to the proposed manner of effecting the crossing thereof by the Belt Railroad Company, as reported by the said commissioners, the property of the Missouri Pacific Railway Company will be greatly and irreparably damaged, materially interfering with the passage of its cars, carrying freights and passengers, so as to materially cripple its traffic and business, and impairing the said security; that, as provided by the state statute, on the coming in of said report by said commissioners, and filing the same, and paying in to the clerk of the state court the sum awarded as compensation by the commissioners, the said Belt Railroad Company threatens and is about to proceed to enter upon the right of way of the Missouri Pacific Railway Company, and effect said crossing, before the final hearing in said state court on said exceptions, and the right of the Missouri Pacific Railway Company to a trial *de novo* in said circuit court before a jury as to the issues therein involved. The petition alleges that the only safe and practical mode of effecting a crossing of the tracks of the Missouri Pacific Railway at the point in controversy is either by an overhead bridge or an underground way, to which both the corporation and said mortgagees give their consent, without compensation from the Belt Railroad Company. The prayer of the bill is that an injunction be granted restraining said Belt road, its agents, servants, etc., from going upon and making such crossing, as reported by said commissioners, at grade, and from operating said Belt road at a grade crossing, and for further proper relief upon the final hearing.

*Adams & Buckner*, for complainants.

*J. McD. Trimble*, for defendant.

PHILIPS, J. The discussion in this case has taken wide range, covering many questions, both as to the regularity of the proceedings had in the state court and the right of the mortgagees or trustees to be made parties to the condemnation proceeding, etc. On many of these questions I entertain decided opinions, but their expression here is rendered unnecessary in view of the conclusion reached upon a preliminary or jurisdictional question. Section 720, Rev. St. U. S., declares that—

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in a court of the state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

This restriction had its root in that doctrine of the law so aptly expressed by Mr. Justice GRIER in *Peck* v. *Jenness*, 7 How. 624:

"It is a doctrine of law too long established to require a citation of authorities that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and, whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but in necessity; for, if one may enjoin, the other may retort by injunction, and thus the parties be without remedy, being liable to a process for contempt in one, if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin, or any other process, for this would produce a conflict extremely embarrassing to the administration of justice. In the case of *Kennedy* v. *Earl of Cassillis*, 2 Swanst. 313, Lord ELDON at one time granted an injunction to restrain a party from proceeding in a suit pending in the court of sessions of Scotland, which, on more mature reflection, he dissolved, because it was admitted if the court of chancery could in that way restrain proceedings in a foreign tribunal, the court of sessions might equally enjoin the parties from proceeding in chancery, and thus they would be unable to proceed in either court."

In the adoption of the addition to the act establishing the judicial courts of the United States as early as March 2, 1793, this limitation on the jurisdiction of federal courts was placed upon the statutes to give the force of positive law to this rule of comity, in order to preserve the essential and necessary comity between the federal and state courts, and to maintain the independence of each. This rule was applied in *Diggs* v. *Wolcott*, 4 Cranch, 179, where an action was first begun in the state court upon a certain instrument of writing. Afterwards defendant began suit in chancery in the state court to cancel the instrument, and enjoin the plaintiff from proceeding in the law action. On removal of this chancery suit to the United States court, the action was dismissed for the reason that the federal court under the statute in question was forbidden to grant the injunction. This rule has been applied to a variety of actions. *U. S.* v. *Collins*, 4 Blatchf. 156; *Fisk* v. *Railway Co.*, 6 Blatchf. 399; *Riggs* v. *Johnson Co.*, 6 Wall. 195; *Orton* v. *Smith*, 18 How. 265; *Peck* v. *Jenness*, *supra*; *Haines* v. *Carpenter*, 91 U. S. 257; *In re Sawyer*, 124 U. S. 219, 220, 8 Sup. Ct. Rep. 482; *Yick Wo* v. *Crowley*, 26 Fed. Rep. 207.

It can make no difference, as claimed by some of the counsel in argument, that the order of restraint asked for would go against the corporation and its agents and servants, and not against the court as such, or any officer thereof. In *Peck* v. *Jenness*, *supra*, the court, meeting a like suggestion, says:

"The fact that an injunction goes only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise the power over a party who is a litigant in another and independent forum."

Whether the effect of the injunction is to stay or prevent the operation tion of litigation *in limine*, or a judgment rendered or to be rendered therein, in the state court first acquiring jurisdiction, it falls within the terms of the prohibition. *Haines* v. *Carpenter*, 91 U. S. 257 ; *Dial* v. *Reynolds*, 96 U. S. 340. In *Rensselaer & S. R. Co.* v. *Bennington & R. R. Co.*, 18 Fed. Rep. 617, the bill was brought to restrain the defendant road from entering upon the orator's railroad under a claim of authority of an act of the state legislature. The ground of relief claimed was that the legislative act was beyond the power of the legislature, and therefore gave no authority to the railroad company to proceed thereunder. The prayer of the bill was that the defendant, its officers, agents, and workmen, be restrained from running upon that part of the road, and for further relief. The court says:

"As no action or interference except such as may be authorized and had under the proceedings in the supreme court is threatened or apprehended, there is no relief to which the orator is here entitled, unless it is relief from those proceedings. The prosecution of those proceedings, or the carrying out of such order or decree as the supreme court may make upon them, must be restrained if anything effectual is to be done in this case. The restraint of the execution of complete fulfillment of proceedings of a judicial nature is in effect the same as the restraint of the proceedings themselves."

Mr. Justice BRADLEY, in *Haines* v. *Carpenter*, *supra*, said:

"In the first place, the great object of the suit is to enjoin and stop litigation in the state courts, and to bring all the litigated questions before the circuit court. This is one of the things which the federal courts are expressly prohibited from doing."

So here, the Belt Railway Company, under the authority of the state statute, claims that in the condemnation proceeding in progress in the state court, after the coming in and filing of the report of the commissioners, and the payment into the clerk's office of the damages assessed, it has a right to enter upon the tracks of the Missouri Pacific Railway Company for the construction of the proposed crossing. The contention of counsel for the Missouri Pacific is that such asserted right is premature at said stage of the proceeding in the state court, and cannot be lawfully asserted until after disposition of the exceptions to the report, and after the exercise of the right of a trial *de novo* before a jury at its demand. But that is the very question in controversy, and pending in the state court, which it is competent to decide; and the unavoidable effect of a decree of injunction from this court restraining the Belt Railway Company, its agents and servants, from entering upon such work and completing the crossing, is to stay the right of entry claimed by the party seeking the condemnation in the proceeding in the state court, and to draw the litigation and determination of that very question into this court. And if the order and decree of this court is to effectuate and accomplish the manifest purpose of this application for a writ of

injunction, it must stop and foreclose any further proceeding in the state court. We cannot shut our eyes to obvious facts, and hear only the form and semblance of things.

In *Railroad Co.* v. *Scott*, 13 Fed. Rep. 793, suit was instituted in the state court of Texas under the state laws for the condemnation of certain lands for the right of way of the road. Preliminary proceedings had been conducted therein up to the report of the commissioners as to the amount of damages, and the filing of objections thereto by the defendant land-owner. Thereupon the railroad company filed its petition and bond for removal of said cause to the United States circuit court. The bill of complaint filed in the United States circuit court charged that the defendants were proceeding with said cause in said state court in defiance of the petition for removal, which would result in the annoyance and damage of complainant, compelling it to litigate in two different jurisdictions, and causing irreparable delays and injury to the railroad company in fulfilling and meeting certain contracts. An injunction was therein prayed to restrain the parties from any further proceeding in said pending action in the state court. PARDEE, circuit judge, held that the injunction came within the inhibition of section 720. He said:

"The case here is one where the state court undoubtedly had prior jurisdiction, and the question as to whether that jurisdiction has ended, is in dispute between the parties; the state court, undoubtedly, still claiming jurisdiction notwithstanding the petition and bond filed therein to remove the case to this court. The injunction asked for must be refused."

The same rule was followed by Judge DILLON in this circuit in *Chaffin* v. *St. Louis*, 4 Dill. 19. In that case there was a litigation in the state court between the city of St. Louis and the St. Louis Gas-Light Company, quite familiar to the profession and those acquainted with the judicial history of the state. Pending the action in the state court, Chaffin, a non-resident stockholder in the gas-light company, filed his bill in the United States circuit court against the city and the gas company and the Laclede Gas Company alleging that, owing to the manner in which that litigation was being conducted on certain concessions made and acts done therein by the gas company in which he was a stockholder, his rights as a stockholder were being greatly prejudiced, and injury was being done to his stock, and asking that the city be enjoined from further prosecuting said suit, and for certain other matters of relief. The prayer for injunction was amended by striking out so much as asked that the city be enjoined from further prosecuting said suit. Judge DILLON, of this, observed:

"But, notwithstanding this, it is evident that to grant the injunction sought would, if it were effectual for any purpose, be so only because it would in some way interfere with the progress of the litigation in that court. This federal court is prohibited from doing directly, by section 720, Rev. St. U. S."

If the purpose of this application for injunction, and its effect, if granted, be not to prevent the Belt Railway from entering upon the right of way of the Missouri Pacific Railroad for the construction of a

crossing in the condemnation proceedings, what remedy or measure of protection would any decree this court might make afford the complainants? Under the action already had in the state court, or act upon the final judgment to be made therein at the end of the pending litigation, the Belt Railway Company would have the authority of the state court, and the state statute as construed by the court, to enter upon the construction of the cross-road. In so entering, it and its employes would claim that they had the mandate and process of the state court authorizing them thereto. To enforce the injunction granted by this court its marshal would be sent to arrest the parties for contempt. With equal authority and like judicial comity and courtesy the state court, on the recognized theory of having first acquired jurisdiction of the cause, might issue its injunction against the United States marshal, his deputies, and, perchance, *posse comitatus*, to restrain them from interfering with the rights of the Belt Railway Company under the judgment or proceedings of the state court. It was, as I conceive, the very purpose and policy of the federal statute under discussion to prevent such unseemly and hurtful conflicts between the respective courts and discreditable collisions between their ministerial officers. If, as contended for by the trustees of the mortgagees, they are necessary parties to the condemnation proceeding in the state court, and they are not made parties therein, any action taken or judgment rendered by the state court will not bind the mortgagees and leave their right of action for the protection of their interests intact. *Masterson* v. *Railroad Co.*, 72 Mo. 342; *McShane* v. *City of Moberly*, 79 Mo. 41–45. And if, as a matter of fact, the appropriation of the right of way for the mortgaged road and the manner of effecting the crossing threaten material injury to the security of the mortgage, the mortgagees are certainly not without remedy in the proper forum for the protection of their rights and interests. If it should become apparent after the case is finally ended in the state court, and the Belt road had entered and begun operating its road over that of the Missouri Pacific, that the use so damaged the mortaged premises as to materially impair the security, I am not prepared to say that the non-resident mortgagees could not come into this court for relief in an appropriate form of action. But under the present *status* of the case I am forbidden to grant the temporary writ of injunction, and the same is refused.