## KANSAS CITY RAILWAYS COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION.

### Division Two, February 16, 1918.

1. **PUBLIC SERVICE COMMISSION:** Fees. The fees which the Public Service Act authorizes the Commission to charge for the authorization of bonds by a public utility corporation do not come within the classification of fees, paid by the State or by some person, which a public officer is allowed to charge for his individual benefit, but are taxes, payable to the State, go into the State Treasury to the credit of the General Revenue Fund, and are devoted to general public purposes.

2. ————: ————: Proviso to Section 57: Refunding Bonds. The proviso to Section 57 of the Public Service Act, Laws 1913, p. 594, prohibiting the Public Service Commission from charging fees when an issue of bonds is made for the purpose of refunding, discharging or retiring existing bonds, refers to the mere formal act of authorizing the renewal or discharge of the corporation's own existing obligation, not those of another company.

3. ————: ————: Reorganization: New Company: Payment of Existing Mortgages. The properties and franchises of several electric light and street railway companies, encumbered by mortgages, had been acquired by a single company, and the city was claiming that these franchises had been forfeited. Receivers of all these properties were appointed by the Federal court, and a plan of reorganization worked out, by which the appellant, a new company, which had obtained a franchise for thirty years, was formed and was to purchase the street railway properties. and another company was to purchase the electric light properties, at foreclosure sales of the existing mortgages. The appellant com-

174     SUPREME COURT OF MISSOURI,

K. C. Rys. Co. v. Pub. Serv. Comm.

pany was to issue bonds, use a part of their proceeds to pay the existing mortgage and the balance for extensions and improvements, and to receive the properties "clear and unincumbered." It applied to the Public Service Commission for authority to issue the bonds, and after an exhaustive and expensive investigation such authorization was made, and the fees designed by Section 21 of the Public Service Act, Laws 1913, p. 567, were taxed against appellant. *Held*, that the bonds were not refunding bonds, but those authorized by Section 57 of said act "for the acquisition of property," and the appellant was properly taxable with such fees.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate, Judge.*

AFFIRMED.

*Clyde Taylor* and *Charles A. Stratton* for appellant.

(1) The Public Service Commission was without authority to make an order requiring this appellant to pay a fee for authorizing an issue of bonds to take up other bonds. Laws 1913, sec. 21, p. 567. (2) This appellant's obligations were not limited to those which it primarily created, but included those which it assumed. Cone v. Wood, 108 Iowa, 266. (3) Statutes generally should be so construed as to give words and phrases their plain and ordinary and usual meaning. R. S. 1909, sec. 8057. (4) A refunding of a debt is merely a funding anew, and not the creation of a new debt. In re Pounds Estate, 166 Mo. 419; Manly v. Bd. of Commissioners, 46 Colo. 491. (5) A statute relating to fees or costs should be strictly construed. Ford v. Railway, 29 Mo. App. 616; State ex rel. v. Holladay, 67 Mo. 64; State ex rel. v. Gordon, 245 Mo. 28; Shedd v. Railway Co., 67 Mo. 690; State ex rel. v. Wofford, 116 Mo. 223; Gammon v. Lafayette Co., 76 Mo. 676; Bank v. Refrigerator Co., 236 Mo. 414; State ex rel. v. Brown, 146 Mo. 406; State ex rel. v. Adams, 172 Mo. 7. (6) "Strict construction of a statute" defined. Lagler v. Railways, 42 Ind. App. 592; Moore v. Tel. Co., 164 Mo. App. 165; Priest v. Capitain, 236 Mo. 462.

*Alex Z. Patterson* and *James D. Lindsay* for respondent.

(1) The bonds upon which the fee or tax in issue was assessed, are reorganization bonds, not refunding bonds. They are within the general enacting terms of Section 21, but they are not within the proviso. Public Service Commission Act, secs. 21, 57, 62, Laws 1913, p. 567 et seq. (2) The proviso in statutes undertaking to limit general provisions, is to be strictly construed. A party claiming an exemption for his benefit under the terms of the proviso must show a clear right to that exemption. 36 Cyc. 1162; Brown v. Patterson, 224 Mo. 639; Lewis's Sutherland on Statutory Construction (2 Ed.), secs. 351, 352; Ex Parte Lusk, 82 Ala. 519; State v. Telephone Co., 104 Minn. 270; Towson v. Denson, 74 Ark. 302; Clark's Appeal, 58 Conn. 207. (3) The rule invoked by appellant, and the cases cited, that statutes authorizing the collection of fees are to be strictly construed, will not apply here. That rule was stated in cases where the officer claimed from the State a fee for his individual benefit, or demanded for his individual benefit by virtue of his official relation to the State, a fee from another. In such cases the strict rule is applied for the benefit and protection of the State. The rule is here sought to be applied adversely, against the State. Ford v. Railway, 20 Mo. App. 616; State ex rel. v. Holladay, 67 Mo. 64; State ex rel. v. Gordon, 245 Mo. 28; Shedd v. Railway Co., 67 Mo. 690; State ex rel. v. Wofford, 116 Mo. 223; Gammon v. Lafayette Co., 76 Mo. 676; Bank v. Refrigerator Co., 236 Mo. 414; State ex rel. v. Brown, 146 Mo. 406; State ex rel. v. Adams, 172 Mo. 7.

WHITE, C.—The appellant began this proceeding in the circuit court of Cole County to review on *certiorari* an order of the Public Service Commission, whereby the appellant was required to pay fees to the commission amounting to nearly ten thousand dollars, for services rendered appellant by the Commission in

176     SUPREME COURT OF MISSOURI,

K. C. Rys. Co. v. Pub. Serv. Comm.

connection with a bond issue of about twenty-eight million dollars. The circuit court affirmed the order of the Commission and from that judgment appeal is taken.

The fees charged, to which the appellant objects, were authorized, as claimed by respondent, by Section 21 of the Public Service Commission Act, Laws 1913, p. 567. This section provides that the Commission may charge as fees for a certificate authorizing the issuance of bonds, notes, or other evidences of indebtedness, one dollar for each one thousand dollars of the face value of the authorized issue, or fraction thereof, up to one million dollars; and fifty cents for each thousand dollars over one million dollars and up to ten million dollars; and twenty-five cents for each one thousand dollars over ten million dollars; with a minimum fee in any case of $250. The section then contains this proviso:

"*Provided*, that no fee shall be charged when such issue is made for the purpose of guaranteeing, taking over, refunding, discharging or retiring any bond, note or other evidence of indebtedness up to the amount of the issue guaranteed, taken over, refunded, discharged or retired."

The appellant claims that the order in this case is covered by the proviso and the Commission had no authority to charge such fees; that the bonds were issued for the purpose of refunding an existing indebtedness of the company. In order to determine the purpose and character of the bonds it will be necessary to consider the facts leading up to the creation of the appellant company.

In 1913 the street railway systems and the electric light and power properties in Kansas City were being operated by receivers appointed by the Federal court, the order of appointment having been made in June, 1911. At the time of the appointment of the receivers, the Metropolitan Street Railway Company was operating all the properties as the owner, having acquired

them from several different companies and consolidated them into one system. These several properties were subject to separate mortgages, which had been executed by the several owning companies at different times. The several companies had received franchises from Kansas City under which the properties were being operated by the receivers and all these franchises were soon to expire.

It does not appear at whose instance nor in what kind of a proceeding the receivers were placed in charge of these consolidated properties and the Metropolitan ousted from control, but it does appear that the city claimed the franchises had been forfeited. In the proceeding there were decrees of foreclosure, presumably of the several mortgages, under which all the properties were sold and the appellant herein became the purchaser of all the street railways and other property necessary for their proper operation; while another company, the Kansas City Light & Power Company, became the purchaser of the electric light and power properties which were involved in the litigation.

Before such foreclosures Judge William C. Hook of the Federal Circuit Court, under whose authority the properties were operated by the receivers, formulated a plan for what is termed the "reorganization of the Metropolitan Street Railway System at Kansas City." "The plan" was not a court order, but the formulation of an agreement between the parties interested, under which the several properties might be operated for the advantage of the public srevice, and under which the creditors of the several companies might be saved their investments. The plan contained, among other things, provisions as to how anyone who might have "an interest to subserve or protect" might be a party to it. This applied to bondholders, mortgagees, etc., as well as stockholders, and any of these parties could become interested in the new company to be formed. The appellant company then was incorporated. Who the stockholders were does not appear,

whether they comprised all or a part of the original stockholders in the Metropolitan Company, or of the other original companies, or whether they were bondholders, or strangers. The new company first procured from Kansas City a franchise whereby it could operate its street railways upon the streets for a term of thirty years. This franchise, it appears, was one of the principal assets of the new company, which was presented as security for the loans to be procured thereafter on the property. The plan provided that as further security for the bonds to be issued $6,300,000 of the surplus earnings should be used for extension and additions to the property. The plan then provided for the issuance by the appellant company of bonds of various grades, amounting in all to about twenty-eight million dollars, secured by mortgage on the appellant's property, to be purchased under the foreclosure sales above mentioned, with contemplated extensions, and upon the new franchise. The Kansas City Light & Power Company acquired at the same time and under the same conditions and under the same plan the electric lighting and power properties that previously had belonged to the several companies. The result, as aptly stated by the respondents, was, "the reorganization was the working out of a plan whereby the two distinct and new companies holding distinct properties should emerge out of the corporate ashes of the numerous old companies." It was only with the Railways Company that the order under consideration here had to do.

The plan of reorganization contemplated the approval of the Public Service Commission, to which application was made by the appellant for authority to exercise the rights and privileges granted under the franchise, and for an order approving the reorganization of the properties which the new company should control, and permitting the issuance of the securities mentioned. Objection was made to this application by certain citizens of Kansas City, and an exhaustive hearing was had before the Commission. The report of this proceed-

VOL. 273, OCTOBER TERM, 1917.          179

K. C. Rys. Co. v. Pub. Serv. Comm.

ing is before us in a voluminous record covering several hundred pages, showing the work which the Commission did in examining all matters touching the organization and the contemplated indebtedness of the new company, before authorizing the issuance of the bonds under consideration. When this work was done and the bonds authorized, the Commission taxed the costs of which the appellant complains here.

The Public Service Commission Act, in Section 57 (Laws 1913, p. 594), provides for the issuance of bonds by railroad corporations and street railroad corporations after procuring from the Commission an order authorizing such issue. That part of the section relating to it is as follows:

"Sec. 57. *Approval of issues of stocks, bonds and other forms of indebtedness.*—A common carrier, railroad corporation or street railroad corporation organized or existing, or hereafter incorporated, under or by virtue of the laws of the State of Missouri, may issue stocks, bonds, notes, or other evidences of indebtedness payable at periods of more than twelve months after the date thereof, *when necessary for the acquisition of property, the construction, completion, extension, or improvement of its facilities, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations or for the reimbursement of moneys actually expended* from income, or from any other moneys in the treasury of the corporation not secured by or obtained from the issue of stocks, bonds, notes, or other evidence of indebtedness of such corporation, within five years next prior to the filing of an application with the commission for the required authorization, for any of the aforesaid purposes except maintenance of service and except replacements in cases where the applicant shall have kept its accounts and vouchers of such expenditure in such manner as to enable the commission to ascertain the amount of moneys so expended and the purposes for which such expenditure was made."

The remaining part of the section provides the conditions under which the Commission may and may not authorize the issuance of such bonds and notes, and the restrictions upon its authority.

It will be noticed that the purposes for which a common carrier may be authorized to issue bonds, notes, and other evidences of indebtedness are as follows:

(1) When necessary for the acquisition of property;

(2) For the construction, completion, extension or improvement of its facilities;

(3) For the improvement or maintenance of its service;

(4) For the discharge or lawful refunding of *its obligations;*

(5) For the reimbursement of moneys actually expended from income, etc.

Section 62 of the act provides that the reorganization of railroad corporations and street railroad corporations shall be subject to the control of the Commission. This section then says:

"Upon all such reorganizations the amount of capitalization, including therein all stocks and bonds or other evidence of indebtedness, shall be such as is authorized by the commission, which, in making its determination, shall not exceed a fair value of the property involved," etc.

The appellant claims that the bonds in this case come under the fourth subdivision in Section 57, and were issued by the company for the "refunding of *its* lawful obligations," and therefore are within the proviso of Section 21 to the effect that no fee shall be charged for refunding . . . any bonds, notes, etc.

Respondents assert that these are reorganization bonds, and provided for in section 62; that they are different from and not included in any class mentioned in Section 57.

It is clear that reorganization bonds mentioned in Section 62 might be of some class, possibly all classes, authorized by Section 57. Section 62 does not, in terms,

authorize the issuance of any bonds, nor does it seem necessary to imply such authority in view of the specific statement in Section 57. It may be that the bonds mentioned in Section 62 are limited to the classes allowed by Section 57. However, it is not necessary to determine that question for our purpose here, as presently will appear.

Section 21 appears in the general provisions of the Public Service Commission Act, while Sections 57 and 62 appear in the articles relating to common carriers, and Section 57 is the only section under which the Commission can authorize a carrier to issue bonds, unless the authority is implied in Section 62. Section 21 does not authorize the issuance of bonds for any purpose. It relates to fees and to fees only. It cannot enlarge the authority given under Section 57, and the proviso, so far as it refers to that section, reaches only the fourth classification of purposes for which bonds are there authorized. If it covered a wider range than that it would be inoperative.

It is not claimed by the appellant that the bonds here were authorized by Section 62, or were of a different class from any mentioned in Section 57; it stands squarely on the proposition that they are covered by the fourth subdivision in the latter section. Therefore, unless the bonds in this case come under the fourth subdivision in Section 57, the cost was properly taxed. Appellant argues that "its obligations," of the fourth subdivision, refers not only to those which the company itself originally incurred, but also all obligations for which it may have become liable subsequent to their issuance. Counsel use this illustration:

"The matter has been aptly illustrated by the case of the purchaser of real estate encumbered by mortgage. It is not his obligation in the sense that he first placed it in operation, but it is his obligation in every sense of the word when he assumed to pay it and took the property subject to its payment."

182        SUPREME COURT OF MISSOURI,

K. C. Rys. Co. v. Pub. Serv. Comm.

If the appellant had bought all these properties in the manner in which it did, under decrees of the Federal court, and had become a going concern operating the property after *assuming* an indebtedness which was to remain on the several properties, then the illustration of the appellant would be pertinent. But that is not the case. The appellant did not assume this indebtedness. It purchased the property under decrees of foreclosure of mortgages which secured the indebtedness. The plan, which was stated to be for the protection of creditors, stockholders, the city and the public, provided that in the transfer of the property necessary steps should be taken "to clear the same of all existing mortgages," and the new company should receive "a clear and unencumbered title;" it provided, further, that the stockholders should have "no liability except specially undertaken;" that the mortgages authorized by the new company should contain suitable provisions whereby it might issue bonds "with which to acquire or discharge the claims of holders of mortgage bonds against the old companies."

All this shows that the appellant acquired its titles to the properties by foreclosure which paid the indebtedness; that the acquisition of the title and the payment of the obligations occurred at one and the same time. It is claimed that the appellants assumed the debts of the several companies when it procured the franchises and accepted the plan of reorganization. It did agree to pay them, but only upon the condition that the plan should go through, and title vest in it, just as it agreed to pay the rest of the purchase money. The assumption, if it can be called so, was merely a step in the process of liquidation. The reorganization, so-called, was for the purpose of purchasing the property, paying the debts and continuing the public service. It never was contemplated that the purchasing company should operate the property and continue the indebtedness. The bonds issued in this case are more aptly described in the first classification in Section 57 of purposes for

VOL. 273, OCTOBER TERM, 1917.    183

K. C. Rys. Co. v. Pub. Serv. Comm.

which they were issued, "for the acquisition of property," and not for the refunding of the purchasers' indebtedness. If the appellant already had been operating a street railway as owner and had bought these properties, discharging the debts as part of the purchase price, there would be no question that the transaction would come under the first classification. There seems to be no difference in principle between that and the deal which took place. The appellant had a valuable franchise to which it added these other properties by purchase under foreclosure.

The bonds and other debts liquidated by the appellant in the purchase of the several properties were never "its obligation," whether that expression be given a literal or a liberal interpretation. The proviso in Section 21, which excepts certain classes of debts from this taxation, limited by the terms of Section 57, refers to such as are required in the renewal or discharge of the company's existing debts where the duties of the Commission in authorizing them would merely be formal. It could not have been contemplated by the Legislature to disallow compensation to the State for the service of the Commission, where such service involves the exhaustive and expensive investigation which was required and performed in this case.

Appellant lays great stress upon the proposition that this statute, Section 21, must be construed strictly against the allowance of fees because strict construction is applied by the courts to statutes relating to fees. But the cases cited are all cases where a public officer charges fees, paid by the State or by some person, for his individual benefit. Here it is not the State which is paying, nor an individual who is receiving, the fees. The fees are payable to the State, and, by the express terms of Section 21, go into the State Treasury to the credit of the General Revenue Fund. It is a tax, the proceeds of which are devoted to general public purposes. Appellant claims its property, the bonds, are exempt from this taxation. Statutory clauses, exempting certain

property from the operation of statutes which are general in their application, imposing taxes, are strictly construed in favor of the State. [B. P. O. E. v. Koeln, 262 Mo. 444; State ex rel. v. Johnston, 214 Mo. 656.]

The appellant can invoke no rule of construction which will exempt it from payment to the State of the compensation allowed, for the extraordinary service rendered by the Commission.

The judgment is affirmed.

*Roy, C.,* concurs.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.