## SHAW, Banking Com'r, v. LONE STAR BUILDING & LOAN ASS'N.*
### No. 7627.

Court of Civil Appeals of Texas. Austin.
May 27, 1931.

Rehearing Denied June 10, 1931.

---

*Writ of error granted.

James V. Allred, Atty. Gen., Everett L. Looney, Asst. Atty. Gen., and Jno. W. Goodwin, of Austin, for appellant.

Barkley & Webb and Kenneth Krahl, all of Houston, for appellee.

BLAIR, J.

This appeal is from an order perpetually restraining appellant, as banking commissioner of Texas, from annulling appellee's permit to do a building and loan business, except by an action in court, because appellee was charging a larger membership fee on its capital stock sold than authorized by section 45 of chapter 61, Acts 2d Called Session, 41st Legislature (Vernon's Ann. Civ. St. art. 881a—44), regulating building and loan associations, and under which appellee was incorporated and was operating. Appellant claimed authority to annul the permit without court action under section 13 of said chapter 61 (Vernon's Ann. Civ. St. art. 881a—13), which reads as follows: "Sec. 13. Illegal, Unauthorized, Unsafe, or Fraudulent Practices.—Remedies. In case the Banking Commissioner of Texas shall find, upon examination or from other evidence, that any building and loan association is conducting its business, in whole or in part, contrary to law, or failing to comply with the law, that its assets are less than its liabilities, including all its capital stock, or is conducting its business in an unsafe, unauthorized or fraudulent manner, the Banking Commissioner of Texas shall, by an order in writing addressed to the president of such association, direct attention thereto and order compliance with the law, and that the assets be increased to equal liabilities, and in case such association shall refuse or neglect to comply with any such order lawfully made, or in case any such association is insolvent or in danger of insolvency, or its assets are impaired, then the Banking Commissioner of Texas shall annul its certificate of authority and may begin an action to revoke the charter of such association and for the appointment of a receiver thereof and the winding up of its affairs. Any action begun under this Section shall be brought in the county where such association has its principal place of business, and in the name of the State of Texas on relation of the Banking Commissioner of Texas, and shall be prosecuted by the Attorney General."

The trial court construed this statute to authorize appellant to annul appellee's permit to do business only by an action brought in accordance with the provisions of the last sentence of the act, and we have reached the same conclusion. It provides for only two actions which the banking commissioner may bring against a building and loan association found to be doing "illegal, unauthorized, unsafe" acts, or engaged in "fraudulent practices," namely, to annul its permit to do business and to revoke its corporate charter. He may bring either one or both actions for the same wrongful act or conduct on the part of the association; but "any action begun under this section shall be brought" as directed by the last sentence of the section above quoted.

The word "any" is defined and is used in this statute to mean "every" or "all," or "no matter what one." Webster's New International Dictionary. "Any" is also used as a term synonymous with "either" and is given the full force of "every" or "all." Bouvier Law Dictionary, p. 205; McMurray v. Brown, 91 U. S. 265, 23 L. Ed. 321; People v. Fidelity & Casualty Co. of New York, 153 Ill. 25, 38 N. E. 752, 26 L. R. A. 295.

In its legal sense and acceptance and as used in this statute, the term "action" has been defined to mean "the formal demand of one's right from another person, made and

insisted on in a court of justice." Bouvier Law Dictionary, p. 128. "A suit or action, according to its legal definition, is the lawful demand of one's right in a court of justice." 1 Words and Phrases, First Series, page 129, and cases there cited.

When these definitions of the terms "any" and "action" are considered together and given their legal meaning as applied to the language, "any action begun under this Section shall be brought," etc., we think the Legislature intended to provide that any action, not the action alone for revocation of the charter, but any action provided for "under this Section," must be brought in the county where the "association has its principal place of business, and in the name of the State of Texas on relation of the Banking Commissioner of Texas, and shall be prosecuted by the Attorney General."

■ But if section 13 should be construed as authorizing appellant to annul appellee's permit to do business without court action, it thereby clothed him, an executive or administrative officer, with judicial power in violation of section 1 of article 5 of the state Constitution, vesting the exercise of judicial power in the judiciary; and also in violation of section 19 of article 1 of the state Constitution, known as the due process of law clause, which "requires a hearing before a lawful tribunal before condemnation and judgment" depriving a person of his property. Wichita Electric Co. v. Hinckley (Tex. Civ. App.) 131 S. W. 1192, which holds that the right to pursue a lawful occupation is one of which a citizen cannot be deprived without due process of law. It is indisputable that, if the statute authorized appellant to annul the permit without court action, it vested in him far-reaching and intricate exercise of judicial powers. It authorized him to determine "upon examination or from other evidence" whether a building and loan association was conducting its business illegally, or in an "unauthorized, unsafe" manner, or whether such association was engaging in "fraudulent practices." If appellant concluded such association was unlawfully conducting its business or was engaged in fraudulent practices, then, upon the association's refusal to cease its unlawful conduct or fraudulent practices, appellant might summarily annul its permit to do business. The determination of these questions "upon examination and other evidence," and the imposition of the penalty, annulment of the permit to do business, involve all elements of a judicial proceeding and power, the exercise of which the Constitution has vested in the judiciary.

■ Another far-reaching exercise of judicial power by appellant in this case was a determination of the question, which appellant insisted by pleadings and his brief herein that he had the right to determine; that, as applied to appellee, section 45 of chapter 61 (Vernon's Ann. Civ. St. art. 881a—45) inhibiting the charging of membership fee of more than $2 on the $100-share of the capital stock sold, was not a retroactive law or a law impairing the obligation of appellee's contract, in violation of the fundamental law of both state and nation, in that appellee was incorporated prior to the enactment of section 45, had adopted by-laws providing a membership fee of $2.50 on the $50-share of capital stock sold, and had on February 1, 1929, entered into an operating contract with A. B. Elkron, whereby he was given exclusive right to sell appellee's capital stock for a period of ten years, and for which service he was to receive $2.25 of each membership fee paid. In like manner appellant pleaded and here insists that he had the authority to determine the validity of this contract and to hold same invalid because it extended for a period of more than one year, and was therefore beyond the authority of appellee's board of directors, in that the board had no authority to bind the association and future boards for a period of ten years. We think it clear that the Legislature did not intend to authorize appellant to exercise these far-reaching and intricate judicial powers, but directed that where, "upon examination or from other evidence," the banking commissioner found an association doing "illegal, unauthorized, unsafe" acts, or engaged in "fraudulent practices," he must institute an action in accordance with the statute to annul its permit to do business, or to revoke its charter or to do both. This conclusion is sustained under the rule that courts will construe a statute to be constitutional rather than to give it a construction which would render it unconstitutional.

The trial court's judgment is affirmed.

Affirmed.