STATE OF MISSOURI at the Relation of UNION ELECTRIC LIGHT AND POWER COMPANY, a Corporation, v. PUBLIC SERVICE COMMISSION, Appellant.—84 S. W. (2d) 905.

Division Two, July 11, 1935.

*Sam O. Hargus,* General Counsel, and *James P. Boyd,* Assistant Counsel, for Public Service Commission.

*Rassieur & Rassieur* and *Alfred C. Wilson* for respondent.

COOLEY, C.—Respondent has succinctly stated the facts necessary to determination of this appeal. We adopt that statement, inserting reference to Missouri Statutes Annotated, as follows:

"Appellant, Public Service Commission of Missouri, brings this

case here by appeal from an order of the Circuit Court of Cole County, Missouri, reversing and remanding an order of the Public Service Commission requiring respondent, Union Electric Light and Power Company, to pay fees amounting to $4108 assessed under Section 5141, Revised Statutes 1929 (Mo. Stat. Ann., p. 6548), in connection with the issuance of refunding bonds.

"Briefly, the facts are that on January 18, 1933, respondent made application to issue and sell $11,250,000 of its general mortgage bonds for the following purposes:

"(1) To retire $4,034,003 general mortgage bonds, the issuance of which had been previously authorized by the Commission. (2) To retire $6,986,146 of general mortgage bonds issued prior to the enactment of the Public Service Commission Law March 17, 1913, and therefore not previously authorized by the Commission. (3) The remaining $229,851 to reimburse its treasury for moneys expended from income or other moneys in its treasury to retire notes which were a lien on real estate acquired by respondent, which had assumed payment of the notes. All of the bonds to be retired had been assumed by respondent and were its outstanding obligations. A formal hearing was held before the Commission on January 23, 1933, and afterwards on the same day an order was duly made by the Commission authorizing the issuance of the bonds as prayed. Thereafter, on March 30, 1933, the Commission entered an order requiring respondent to pay to the Treasurer of the State of Missouri the sum of $4108 as fees chargeable under Section 5141, Revised Statutes 1929. This fee was computed according to the scale provided in Section 5141 upon items (2) and (3), supra, aggregating $7,215,997, upon the theory that the issuance of the bonds retired under item (2) had not previously been authorized by the Commission. No fees were charged on item (1), supra, because the issuance of those bonds had been previously authorized by the Commission. Respondent filed a motion for rehearing, excepting to the taxation of fees in the sum of $4108 upon the ground that said order was unlawful, unjust and unreasonable, and in violation of Section 5141 so far as fees on item (2) were concerned. No objection was made by respondent to the assessment of fees on item (3). This motion was overruled by the Commission and respondent instituted this action by certiorari under Section 5234, Revised Statutes 1929 (Mo. Stat. Ann., p. 6661), to review the Commission's order. Upon hearing in the Circuit Court the order of the Commission complained of was set aside and the cause remanded to the Commission. The Commission then brought the case here by appeal from the judgment of the Circuit Court.

"The only question involved is whether, as respondent contends, Section 5141 excludes the power or authority to tax fees on bonds

issued for the purpose of refunding any and all bonds retired thereby; or, stated otherwise, whether, as appellant contends, under the statute fees may be taxed by the Commission upon the issuance of bonds for the purpose of retiring bonds issued prior to the passage of the Public Service Commission Law, the issuance of which had not, therefore, been previously authorized by the Commission."

The pertinent portion of said Section 5141 reads:

"The commission shall charge and collect the following fees: . . . For certificate authorizing an issue of bonds, notes or other evidences of indebtedness, one dollar for each thousand dollars of the face value of the authorized issue, or fraction thereof, up to one million dollars, and fifty cents for each one thousand dollars over one million dollars and up to ten million dollars, and twenty-five cents for each one thousand dollars over ten million dollars, with a minimum fee in any case of twenty-five dollars: *Provided*, that no fee shall be charged when such issue is made for the purpose of guaranteeing, taking over, refunding, discharging, or retiring any bond, note or other evidence of indebtedness up to the amount of the issue guaranteed, taken over, refunded, discharged or retired."

The statutory provision in question has been construed by this court in but one case that has been called to our attention and we have found no other. That case is Kansas City Railways Company v. Public Service Commission, 273 Mo. 173, 201 S. W. 74. Appellant cites and relies upon it. Respondent says that said decision lends force to its contention.

Examination of the decision in said Railways Company case reveals that it is based upon an essentially different state of facts and is not authority for appellant's contention on the facts here presented. In that case the appellant, plaintiff there, had been organized for the purpose of acquiring certain properties on the basis of which it proposed to issue the bonds there in question. Prior owners of the properties had given mortgages thereon to secure bonds issued or like indebtedness owed by them, and foreclosure of such mortgages had been decreed. The railways company procured a franchise from Kansas City and proposed to acquire and operate the properties. The properties were sold in the foreclosure proceedings and the railways company became the purchaser. It then applied to the Public Service Commission for approval of the proposed plan of reorganization and for authority to issue bonds in the sum of about twenty-eight million dollars to pay the purchase price of the properties. Said plan contemplated that creditors of the old companies should be paid out of the proceeds of said foreclosure sales. Another new corporation was organized to acquire in the same way certain other properties of the old companies. The court said, 273 Mo. l. c. 178, 201 S. W. 74, 75: "The reorganization

was the working out of a plan whereby the two distinct and new companies holding distinct properties should emerge out of the corporate ashes of the numerous old companies," and further said, same page:

"The plan of reorganization contemplated the approval of the Public Service Commission, to which application was made by the appellant for authority to exercise the rights and privileges granted under the franchise, and for an order approving the reorganization of the properties which the new company should control, and permitting the issuance of the securities mentioned. Objection was made to this application by certain citizens of Kansas City, and an exhaustive hearing was had before the commission. The report of this proceeding is before us in a voluminous record covering several hundred pages, showing the work which the commission did in examining all matters touching the organization and the contemplated indebtedness of the new company, before authorizing the issuance of the bonds under consideration. When this work was done and the bonds authorized, the commission taxed the costs of which the appellant complains here."

The court, after discussing the facts and the applicable law, held that the railways company had not assumed the indebtedness of the old companies and that the bonds proposed to be issued were not for the purpose of refunding indebtedness of said railways company but were more aptly described as bonds "for the acquisition of property," under another provision of the statute. The court then said, 273 Mo. l. c. 183, 201 S. W. 74, 77:

"The bonds and other debts liquidated by the appellant in the purchase of the several properties were never 'its obligation,' whether that expression be given a literal or a liberal interpretation. The proviso in Section 21, which excepts certain classes of debts from this taxation, limited by the terms of Section 57, refers to such as are required in the renewal or discharge of the company's existing debts where the duties of the commission in authorizing them would merely be formal. It could not have been contemplated by the Legislature to disallow compensation to the State for the service of the commission, where such service involves the exhaustive and expensive investigation which was required and performed in this case."

Section 21 referred to in the above quotation is Section 21 of the original Public Service Commission Act, and is now Section 5141, supra. Section 57, therein referred to, applies to railroads and other common carriers. A similar section, Section 75 of the original act, now Section 5196, Revised Statutes 1929 (Mo. Stat. Ann., p. 6620), applies to electrical companies, such as respondent herein. It authorizes such an electrical company to issue bonds, with the approval of the commission, for the acquisition of property and,

*inter alia*, "for the discharge or lawful refunding of *its* obligations." (Italics ours.)

Appellant herein seizes upon a part of the last above-quoted excerpt from said Railways Company case, especially the language, "The proviso in Section 21, which excepts certain classes of debts from this taxation, . . . refers to such as are required in the renewal or discharge of the company's existing debts *where the duties of the commission in authorizing them would be merely formal*," (italics ours), as an implied holding that where, as here, the bonds proposed to be issued are for the purpose of refunding bonds issued before the commission came into existence and therefore not previously authorized by it they are not within the exception referred to. Particular emphasis is placed upon the words which we have italicized. Appellant, however, fails to quote the first sentence of said excerpt, a sentence which we think significant in view of the facts and the question for decision in that case and the discussion thereof by the learned commissioner (later judge), who wrote the opinion. There is noting in that decision indicating that the court meant to make a distinction between bonds issued for the purpose of refunding obligations which had been authorized by the commission and bonds issued to refund those which had not been so authorized. The implication, we think, is to the contrary. The court intimates that, had the railways company bought the properties and *assumed the indebtedness*, "and had become a going concern operating the property after assuming an indebtedness which was to remain on the several properties," bonds issued for the purpose of refunding such indebtedness would not have been subject to the statutory fees or tax. The "indebtedness" of the old companies, to which the court was referring, had been created and the mortgages securing it had been given before the enactment of the Public Service Commission Law, therefore without authorization by the commission. In our opinion the Railways Company case lends no support to appellant's contention.

Appellant argues that it required as exhaustive and expensive an investigation on the part of the commission to determine whether or not the refunding bonds embraced in item 2, supra, should be issued as though such bonds had been "original indebtedness or . . . for the purpose of buying or purchasing additional properties." Anent this argument it may be observed that evidently the commission did not deem such exhaustive and expensive investigation necessary because an examination of the record reveals that no such "exhaustive and expensive" investigation was made. It does not appear that there was any more or different investigation regarding the bonds embraced in said item 2 than of those in item 1. These observations, however, are somewhat afield. The ar-

gument addresses itself to the Legislature rather than to the courts. Whether the fees in question be considered analogous to costs, as respondent suggests they might be, or as a tax, as was held in the Railways Company case, there is no authority for imposing them unless it can be found in the statute quoted above.

The statute is plain and unambiguous. It says that "No fee shall be charged when such (bond) issue is for the purpose of . . . refunding . . . *any* bond, note or other evidence of indebtedness up to the amount of the issue . . . refunded, discharged or retired." (Italics ours.) The word "any" is so well understood as hardly to require definition. In Shaw v. Lone Star Building & Loan Association, 40 S. W. (2d) 968, the Texas Court of Civil Appeals had under consideration a statute providing how and in what court "any action" thereunder should be brought. The court said, 40 S. W. (2d) 1. c. 969 (1, 2),

"The word 'any' is defined and is used in this statute to mean 'every' or 'all,' or 'no matter what one.' [Webster's New International Dictionary.] 'Any' is also used as a term synonymous with 'either' and is given the full force of 'every.' or 'all.' [Bouvier Law Dictionary, p. 205; McMurray v. Brown, 91 U. S. 265, 23 L. Ed. 321; People v. Fidelity & Casualty Co. of New York, 153 Ill. 25, 38 N. E. 752, 26 L. R. A. 295.]"

Such is the general meaning and use of the word, and thus, we think, it was used in the statute under consideration. There is nothing in the context to indicate that the Legislature intended it to be given a different or more restricted meaning than it naturally or usually imports. When the Public Service Commission Law was enacted, by which law the commission first came into existence, the Legislature must have known that there were outstanding many lawfully issued bonds and similar obligations of corporations brought by that law under the supervision of the commission which the corporations owing them might thereafter desire to refund. By Section 5196, supra (Sec. 75 of the original act), an electrical company (among others) is authorized, with permission of the commission, to issue bonds "for the discharge or lawful refunding of its obligations." The statute does not restrict and obviously was not intended to restrict the issuance of refunding bonds to the purpose of retiring obligations issued by authority of the commission after that tribunal came into existence. If it had been the purpose of the Legislature to authorize fees to be charged for the authorization of bonds for refunding obligations existing at the time the law was passed and which, therefore, had not been authorized by the commission, while excepting from such charge bonds issued for refunding obligations thereafter created with permission of the commission, it would have been an easy matter for the Legislature to have so provided in plain

terms. Instead it expressly provided that no fee shall be charged when the bond issue is for the purpose of refunding *any* bond, etc., up to the amount of the issue refunded. That language so used is appropriate to embrace all such refunding bonds, of whichever kind or class, and cannot be interpreted to mean anything else except by giving it a strained construction not called for or warranted by the context or by the evident purpose of the statute.

We hold that the commission was without authority to charge or collect the fees in dispute. Respondent concedes that the statutory fees are chargeable for such part of the bonds as were issued to reimburse its treasury for moneys expended from income or other moneys in its treasury, designated as item 3, supra, hence that item need not be discussed. The judgment of the circuit court is correct and it is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.